## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDRE PELLETIER, Individually and on Behalf of All Others Similarly Situated, <br><br>                   Plaintiffs, <br><br>    v. <br><br> ENDO INTERNATIONAL PLC, RAJIV KANISHKA LIYANAARCHCHIE DE SILVA, SUKETU P. UPADHYAY, and PAUL V. CAMPANELLI, <br><br>                Defendants. | No. 2:17-cv-05114-TJS <br><br> **ORAL ARGUMENT REQUESTED** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement .........................................................................................1

Background .........................................................................................................2

    A.    Endo And The Individual Defendants ....................................................2

    B.    Endo's Expansion Into Generics ............................................................2

    C.    Governmental Investigators Examine Prices In The Generics Industry And
        Endo Promptly Discloses All Regulatory Subpoenas...............................3

    D.    Attorneys General Sue Numerous Generic Pharmaceutical Companies ...............3

    E.    Endo Announces A Goodwill Write-Down And Revised Guidance Due To
        Evolving External Forces In Generics ....................................................4

Argument ............................................................................................................4

I.      PLAINTIFF'S SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR
       FAILURE TO ALLEGE A FALSE STATEMENT AND SCIENTER ...........................4

    A.    The Elements Of A Section 10(b) Claim ................................................4

    B.    Heightened Pleading Standards Apply To Section 10(b) Claims ...........................5

    C.    Plaintiff's Section 10(b) Claim Should Be Dismissed For Failure To
        Allege A Material False Or Misleading Statement ..................................6

        1.    Defendants Had No Obligation To Accuse Themselves Of
             Anticompetitive Or Illegal Conduct..................................6

        2.    Plaintiff Alleges No Facts Establishing That Statements Regarding
             Endo's Income Were Inaccurate ......................................7

        3.    Plaintiff Alleges No Facts Establishing That Statements Regarding
             Markets Or Prices Were Inaccurate ..................................8

            a.    Parallel Conduct Does Not Establish Illegal Or
                Anticompetitive Conduct .....................................11

            b.    Market Conditions And Profit Motive Do Not Establish
                 Illegal Or Anticompetitive Conduct...............................12

            c.    Opportunity To Communicate With Competitors Does Not
                 Establish Illegal Or Anticompetitive Conduct......................13

            d.    Plaintiff's Inadequate Allegations That Endo Acted Against
                 Its Self-Interest Do Not Establish Illegal Or
                 Anticompetitive Conduct .....................................14

i

    4.    Many Challenged Statements Are Inactionable As "Puffery," Forward-Looking Statements, And Opinions ...............................................15

        a.    Statements Of "Puffery" Are Inactionable ....................................15

        b.    Forward-Looking Statements Are Inactionable Under The PSLRA "Safe Harbor" ...................................................................16

D.    Plaintiff's Section 10(b) Claim Should Be Dismissed For Failure To Establish A "Strong Inference" Of Scienter ...........................................17

    1.    Plaintiff Alleges No Conscious Misbehavior Or Recklessness .................18

    2.    Plaintiff Alleges No Motive To Engage In Securities Fraud ....................20

    3.    The More Compelling Inference Is Non-Fraudulent ...............................22

II.    PLAINTIFF'S "CONTROL PERSON" CLAIMS UNDER SECTION 20(A) OF THE EXCHANGE ACT SHOULD BE DISMISSED FOR FAILURE TO ESTABLISH A PREDICATE VIOLATION ...................................................................22

Conclusion ...............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Advanta Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999)................................................................................21

*In re Amarin Corp. PLC*,
    13-CV-6663 (FLW)(TJB), 2015 WL 3954190 (D.N.J. June 29, 2015) ................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................5

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)..........................................................8, 9, 19

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999)..........................................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007)......................................................................................11

*Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*,
    No. CIV.A. 09-2642, 2010 WL 3749459 (E.D. Pa. Sept. 27, 2010) ................................15, 16

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)......................................................................................11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1420 (3d Cir. 1997)..........................................................................15

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011)......................................................................11, 12, 13

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)..........................................................................19

*In re Chocolate Confectionary Antitrust Litig.*,
    801 F.3d 383 (3d Cir. 2015)......................................................................10, 12, 14

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004)..............................................................6, 8

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)......................................................................3, 5, 15, 22

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
  442 F. App'x 672 (3d Cir. 2011) .........................................................17

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008).................................................9

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350 (3d Cir. 2004).............................................................10

*Galati v. Commerce Bancorp, Inc.*,
  220 F. App'x 97 (3d Cir. 2007) ...............................................6, 8, 15

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)..............................................20

*Gold v. Ford Motor Co.*,
  577 F. App'x 120 (3d Cir. 2014) .......................................................17

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004).................................................18, 20, 21

*Hammerstone NV, Inc. v. Hoffman*,
  No. 09 CV 2685 (HB), 2010 WL 882887 (S.D.N.Y. Mar. 10, 2010) ......................................7

*Hart v. Internet Wire, Inc.*,
  145 F. Supp. 2d 360 (S.D.N.Y 2001)................................................18

*In re Hertz Glob. Hldgs, Inc. Sec. Litig.*,
  No. CIV.A. 13-7050, 2015 WL 4469143 (D.N.J. July 22, 2015)............19

*Hogan v. Pilgrim's Pride Corp.*,
  No. 16-cv-2611, 2018 WL 1316979 (D. Colo. Mar. 14, 2018) ..............9

*In re Incyte Shareholder Litig.*,
  No. CV 13-365, 2014 WL 707207 (D. Del. Feb. 21, 2014) ..................15

*InterVest, Inc. v. Bloomberg, L.P.*,
  340 F.3d 144 (3d Cir. 2003)..............................................................13

*Jackson v. Halyard Health, Inc.*,
  No. 16-CV-05093-LTS, 2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018)................20

*Just New Homes, Inc. v. Beazer Homes*,
  293 F. App'x 931 (3d Cir. 2008) .......................................................13

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ....................................................3

*In re Nice Sys., Ltd. Sec. Litig.*,
  135 F. Supp. 2d 551 (D.N.J. 2001) ...................................................................20

*In re NutriSystem, Inc. Sec. Litig.*,
  653 F. Supp. 2d 563 (E.D. Pa. 2009) ...................................................................5

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d. Cir. 2016)................................................................................16

*In re PDI Sec. Litig.*,
  02-Civ-0211 (GEB), 2006 WL 3350461 (D.N.J. Nov. 16, 2016) .........................21

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015)...................................................................14

*Pension Fund Grp. v. Tempur-Pedic Intern., Inc.*,
  614 F. App'x 237 (6th Cir. 2015) ........................................................................16

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc.*,
  998 F.2d 1224 (3d Cir. 1993)...............................................................................13

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) ...................................................................18

*Resco Prods. Inc. v. Bosai Minerals Grp. Co.*,
  158 F. Supp. 3d 406 (W.D. Pa. 2016)...................................................................13

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002)...................................................................................5

*RSM Prod. Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009)....................................................................7

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996)....................................................................................6

*In re Sierra Wireless*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007)...................................................................14

*Solomon-Shrawder v. CardioNet, Inc.*,
  No. CIV.A. 09-3894, 2010 WL 3168366 (E.D. Pa. Aug. 10, 2010) ......................19

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010)..................................................................7, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................17, 18, 21, 22

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................................................22

*Utesch v. Lannett Co.*,
    316 F. Supp. 3d 895 (E.D. Pa. 2018) ..................................................................7, 9, 10, 18

*Valspar Corp. v. E.I. Du Pont De Nemours*,
    152 F. Supp. 3d 234 (D. Del. 2016) ...............................................................................10, 11

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017) ..................................................................................................10

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ..............................................................................................5, 16

*Winer Family Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ..................................................................................................21

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ..................................................................................11

## STATUTES

15 U.S.C. § 78u-4(b)(1) ..................................................................................................................5

15 U.S.C. § 78u-4(b)(2) ...........................................................................................................5, 17

15 U.S.C. § 78u-4(b)(3)(A) ............................................................................................................5

15 U.S.C. § 78u-5(i)(1) .................................................................................................................16

15 U.S.C. § 78u-5(c) .....................................................................................................................16

## RULES

Fed. R. Civ. P. 9(b) .........................................................................................................................5

Defendants submit this memorandum of law in support of their Motion to Dismiss the

Amended Complaint (cited as "¶ _").

**<u>Preliminary Statement</u>**

Plaintiff tries to transform an ongoing government antitrust lawsuit alleging price-fixing

by "nearly every" generic pharmaceutical manufacturer into a private securities fraud class

action against Endo by asserting that Endo failed to disclose the alleged price-fixing scheme to

its shareholders.  Plaintiff's effort fails.

*First*, the Amended Complaint fails to establish any actionable misstatement or omission.

Plaintiff's theory that Endo was required to disclose price-fixing flies in the face of settled law

holding that companies need not accuse themselves of misconduct.  The government antitrust

lawsuit is at the pleading stage, and the law is clear that companies are not required to disclose

unadjudicated litigation allegations.  Moreover, the Amended Complaint fails to allege *any* facts

plausibly suggesting that Endo colluded with other companies to increase prices.  Instead,

Plaintiff argues the existence of an illegal price-fixing agreement based solely on the exact type

of circumstantial evidence—parallel pricing, motive to increase profits, attendance at trade

shows—that courts have repeatedly held are insufficient to support an inference of collusion

because they are entirely consistent with rational, independent business decisions.  Furthermore,

a number of challenged statements are insulated from liability as "puffery" and by the "safe

harbor" of the Private Securities Litigation Reform Act ("PSLRA").

*Second*, the Amended Complaint does not come close to establishing the required "strong

inference" (or *any* inference) of scienter under the PSLRA.  No individual defendant is alleged to

have sold stock or personally profited.  Plaintiff relies entirely upon six confidential witnesses

("CWs") who, even if their allegations are fully credited (which they need not be), offer only the

unremarkable assertion that the individual defendants were actively involved in managing Endo,

1

including its pricing strategy.  The CWs say nothing indicative of fraud.  In any event, none of

the CWs (including, remarkably, a summer "trainee") is alleged to have ever spoken to any Endo

senior executive—yet another reason why their allegations are inadequately pled under settled

law.  Plaintiff's willingness to rely on such allegations speaks volumes of the absence of any

actual *facts* suggesting scienter.

The Amended Complaint fails to state a claim as a matter of law.  It not only should be

dismissed, but because its theories of liability are contrary to law and cannot be cured by

amendment, it should be dismissed with prejudice.

## **Background**[1]

### A.    **Endo And The Individual Defendants**

Endo develops, manufactures, markets, and distributes certain specialty and generic

pharmaceutical products.  (¶ 22.)  The individual defendants are current and former senior Endo

executives.  Rajiv De Silva was Endo's President and CEO from March 2013 to September

2016.  (¶ 24.)  Suketu Upadhyay was Endo's CFO and Executive Vice President from September

2013 to November 2016.  (¶ 25.)  Paul V. Campanelli was President of Endo's generics division

from September 2015 to September 2016, and has been Endo's CEO since September 2016.

(¶ 26.)

### B.    **Endo's Expansion Into Generics**

Endo, historically a manufacturer of branded pharmaceutical products, acquired generic

manufacturer Qualitest Pharmaceuticals ("Qualitest") in 2010.  (¶¶ 23, 31.)  Endo later purchased

generic manufacturer DAVA in August 2014.  (¶ 39.)  In September 2015, Endo acquired Par, a

---

[1] The Amended Complaint's well-pled allegations are taken as true solely for purposes of this
motion.  Defendants, of course, reserve the right to dispute all allegations.

privately-held generic pharmaceutical company.  (¶¶ 56, 241.)  Par's CEO, Mr. Campanelli,

joined Endo as the President of Endo's expanded generics division.  (¶ 26.)

### C.     Governmental Investigators Examine Prices In The Generics Industry And Endo Promptly Discloses All Regulatory Subpoenas

In 2014, the Connecticut Attorney General and the U.S. Department of Justice ("DOJ")

began investigating the pricing of certain generic pharmaceutical products.  (¶ 7.)  The

Connecticut AG initially issued subpoenas to certain pharmaceutical companies, but not to Endo.

(¶ 47.)  In November 2014, the DOJ issued subpoenas to Par (then a private company) and other

generic pharmaceutical manufacturers, but not to Endo.  (*Id.*)  In December 2015, Endo received

a subpoena from the Connecticut AG seeking information regarding Endo's pricing for certain

generic products (¶ 67), which it disclosed in its next quarterly report (¶ 74).[2]

### D.     Attorneys General Sue Numerous Generic Pharmaceutical Companies

On December 14, 2016, a number of state AGs filed a civil antitrust lawsuit against

certain generic pharmaceutical companies, but not Endo.  (¶¶ 3, 177-78.)  *See Connecticut, et al.*

*v. Aurobindo Pharma USA, Inc., et al.*, No. 16-cv-2056 (D. Conn.).  The case was subsequently

transferred to this District and amended to include Par (now owned by Endo) as a defendant

"along with nearly every [other generic] manufacturer."  (¶ 177; *see also Connecticut, et al. v.*

*Actavis Holdco U.S., Inc., et al.*, No. 17-cv-3768 (E.D. Pa.) [Dkt. No. 14].)  The AGs' lawsuit

---

[2] On a motion to dismiss, the court "must evaluate the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, including documents incorporated into the complaint by reference and matters of which [the court] may take judicial notice."  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014).  The court may "take judicial notice of SEC filings."  *See id.* at 163 n.3.  Notably, and despite Plaintiff's suggestion to the contrary (¶¶ 13, 68), there is no obligation to disclose the mere receipt of such a regulatory subpoena.  *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (disclosure required only if litigation is "substantially certain to occur").

3

alleges industrywide "illegal conspiracies as to 15 generic drug products, the purpose of which was to avoid price erosion" by "agreeing to raise prices in coordination," "agreeing to not compete for each others' market share," and "agreeing to allocate market share among themselves across numerous drugs without competing on price[.]" (¶ 178.)

E. **Endo Announces A Goodwill Write-Down And Revised Guidance Due To Evolving External Forces In Generics**

On February 28, 2017, Endo released its financial results for the fourth quarter of 2016 and announced, among other things, disappointing performance in its U.S. generics business. (¶ 264.) Endo reported an impairment charge, of which $2.85 billion was associated with a write-down of goodwill and intangible assets in its generics division. (*Id.*) On the ensuing earnings call, Endo explained that the charge "reflect[ed] the quickly evolving new realities of the U.S. generics external environment, as characterized by increased buying power from the continued consolidation of its customer base, increased levels of competition due to new low cost competitors, and accelerated FDA ANDA approvals" along with a "change in value [derived] from estimated future pricing levels." (Ex. 1, Endo Q4 2016 Earnings Call Transcript, at 7 (Feb. 28, 2017).) Endo's stock price dropped approximately 3.5%. (¶ 265.) This lawsuit followed, largely parroting the antitrust lawsuit's price-fixing allegations,[3] and attempting to allege claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

## Argument

I. **PLAINTIFF'S SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A FALSE STATEMENT AND SCIENTER**

A. **The Elements Of A Section 10(b) Claim**

---

[3] The state AGs' complaint, which names "nearly every" generic pharmaceutical company, naturally involves additional products than the Amended Complaint, which focuses only on Endo.

4

To state a Section 10(b) claim, a plaintiff must plead all of the following:  "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation."  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).  As with any cause of action, a plaintiff must allege "facts" establishing a "plausible" claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 682 (2009).  "[M]ere conclusory statements do not suffice."  *Id.* at 678.

### B.    Heightened Pleading Standards Apply To Section 10(b) Claims

A Section 10(b) plaintiff must also satisfy the heightened pleading requirements of both Rule 9(b) and the PSLRA.  *See In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 577 (E.D. Pa. 2009).  Rule 9(b) "requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted).  The PSLRA imposes several additional requirements, including that plaintiffs (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and (ii) "with respect to each [alleged] act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" (*i.e.*, scienter).  15 U.S.C. § 78u-4(b)(1), (2).  As the Third Circuit has instructed, "[f]ailure to meet the threshold pleading requirements demanded by [Rule 9(b) and the PSLRA] justifies dismissal apart from Rule 12(b)(6)."  *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241 (3d Cir. 2017) (quotation omitted); *see also* 15 U.S.C. § 78u-4(b)(3)(A).

5

**C.     Plaintiff's Section 10(b) Claim Should Be Dismissed For Failure To Allege A Material False Or Misleading Statement**

Plaintiff attempts to allege "three types" of false or misleading statements:  (a) statements "explaining the market," (b) statements "explaining income," and (c) statements "explaining price increases."  (*See* ¶ 186.)  None supports a claim.

**1.     Defendants Had No Obligation To Accuse Themselves Of Anticompetitive Or Illegal Conduct**

Each of Plaintiff's three theories of misstatements is predicated on the notion that Endo should have disclosed that its pricing was "anticompetitive" because it was based on an "illegal agreement to fix prices, rig bids, and allocate markets for generic drugs." (*Id.*)  As an initial matter, for the reasons explained below, nothing in the Amended Complaint establishes that Endo actually engaged in anticompetitive conduct or that there was any illegal agreement.  More fundamentally, however, it is black-letter law that a company is under no obligation to accuse itself of such wrongdoing.  *See*, *e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("Plaintiff's allegation that Citigroup's failure to disclose that its revenues were derived from 'unsustainable and illegitimate sources' violated section 10(b) is likewise unavailing, for the federal securities laws do not require a company to accuse itself of wrongdoing.") (citation omitted).  Such claims are therefore routinely dismissed.  *See id.* at 377-78 (dismissing claims based on failure to disclose alleged improper conduct); *Galati v. Commerce Bancorp, Inc.*, 220 F. App'x 97, 101-102 (3d Cir. 2007) (affirming dismissal of claims based on failure to disclose illegal bid-rigging).[4]  The same result is appropriate here.

_____

[4] To the extent Plaintiff contends that Endo was required to disclose its pricing strategy, this theory also fails.  The law is clear that there is no duty to disclose corporate strategies unless the company made statements that could "have led any reasonable investor to conclude that [the company] had committed itself to a particular marketing strategy and had foreclosed all alternatives." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75

Plaintiff's attempt to piggyback on the state AGs' lawsuit and the DOJ investigation does not change this conclusion.  (¶¶ 176-185.)  "[T]he mere occurrence of [an] investigation is equally consistent with Defendants' innocence" as it involves no finding of misconduct. *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2010), *aff'd* 490 F. App'x 492 (3d Cir. 2012).  As Judge Beetlestone recently explained in dismissing a securities fraud claim based, in part, on government investigations into generic pharmaceuticals pricing, "governmental inquiries into [] purported antitrust violations are unpersuasive in raising the inference that [a defendant] knew about the potential price-fixing."  *Utesch v. Lannett Co.*, 316 F. Supp. 3d 895, 903 (E.D. Pa. 2018).  The same is true for pending litigation.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("[P]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)."); *Utesch*, 316 F. Supp. 3d at 903-04 (rejecting AGs' complaint as a basis for securities fraud claim).

These fatally flawed theories cannot be cured by amendment.  Plaintiff's claims should be dismissed, with prejudice.

### 2.    Plaintiff Alleges No Facts Establishing That Statements Regarding Endo's Income Were Inaccurate

Plaintiff's claims should also be dismissed because it has not adequately pleaded a false statement.  Plaintiff does not contend that Endo's "income"—or any other financial metric—was

---

F.3d 801, 810 (2d Cir. 1996); *see also Hammerstone NV, Inc. v. Hoffman*, No. 09 CV 2685 (HB), 2010 WL 882887, at *5-6 (S.D.N.Y. Mar. 10, 2010) (dismissing claims based on alleged failure to disclose change in strategy).  Here, there are no allegations that Endo committed to seeking market share over price increases.  In fact, the Amended Complaint makes clear that Endo had, in fact, disclosed that it was increasing prices.  (*See, e.g.*, ¶ 191 (attributing income increase to "certain pricing increases").)

misstated by any amount.  Instead, Plaintiff's theory is that certain statements *about* Endo's income were misleading because Endo did not also disclose that its supposedly "risky and unsustainable" pricing decisions "materially contributed to the income from its generics segment" and that Endo supposedly "did not compete on price."  (*See* ¶¶ 186(b), 191, 194, 198, 201, 204, 211-213, 215-216, 218-219.)  These allegations fail to state a claim.

It is black-letter law that "[f]actual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)."  *Galati*, 220 F. App'x at 102 (quotation and citation omitted).  Nor can a claim be based on the theory that Endo failed to disclose that its income was "unsustainable" because of the alleged improper business conduct.  (¶ 186(b).)  As explained below, Plaintiffs fail to adequately plead that Endo engaged in *any* improper conduct.  But even if such conduct had occurred, courts routinely reject the proposition that "statements regarding . . . accurately reported revenue and income [can be] rendered materially misleading by failing to disclose that such income was unsustainable."  *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 587 (S.D.N.Y. 2006); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d at 378 (dismissing securities fraud claims "premised on the assertion that [defendants] breached a duty to disclose that its revenues were 'unsustainable'").  The same result is warranted here.

**3.     Plaintiff Alleges No Facts Establishing That Statements Regarding Markets Or Prices Were Inaccurate**

Plaintiff also cannot state a claim based on alleged misstatements concerning markets or price increases.  Plaintiff contends that Endo's statements describing markets as competitive were misleading because Endo allegedly failed to disclose that it "did not compete on price with other generic manufacturers in several generic drug markets" and, for certain products, "ceded market share to existing manufacturers and to new entrants to avoid competition that would drive

8

down" the prices.  (¶¶ 186(a), 188-190, 205-209.)  With respect to price increases, Plaintiff contends that statements "indicating that Endo's price increases on generic drugs were the result of normal market dynamics" were misleading because they failed to disclose that the price increases were the result of anticompetitive business decisions or collusion.  (¶¶ 186(c), 192, 196, 199.)

These theories also cannot support a claim.  "[N]ondisclosure claims," like those here, "are entirely dependent upon the predicate allegation that [defendants] participated in an anticompetitive scheme" and will not survive a motion to dismiss "[i]f the complaint fails to allege facts which would establish such an illegal scheme." *Axis Capital Holdings*, 456 F. Supp. 2d at 585; *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 355 (S.D.N.Y. 2008) ("Plaintiffs' failure to properly plead the [underlying] wrongdoing that they allege defendants were obligated to disclose is fatal to both their Section 10 and Section 20 claims."); *see also Hogan v. Pilgrim's Pride Corp.*, No. 16-cv-2611, 2018 WL 1316979, at *6-7 (D. Colo. Mar. 14, 2018) (dismissing nondisclosure claims where plaintiff failed to adequately plead existence of a price-fixing scheme).  Here, Plaintiff's allegations of anticompetitive conduct and price-fixing fall far short of what is required to plead a claim for securities fraud.  Moreover, this Court need not decide whether illegal price-fixing was adequately pled in order to grant this motion to dismiss, as the arguments above, as well as those below relating to puffery, the PSLRA safe harbor for forward-looking statements and scienter, are all independent bases for dismissal.  *See Utesch*, 316 F. Supp. 3d at 901-08 (dismissing securities fraud claims based on alleged illegal price-fixing on scienter grounds).

In any event, the Amended Complaint does not allege *any* facts that, if true, would plausibly support an inference of a conspiracy to fix prices.  As a general matter, there are two

9

ways for a plaintiff to plead a price-fixing conspiracy:  (a) by alleging facts that would constitute

direct evidence of an agreement between competitors on prices, or (b) by alleging facts

establishing parallel conduct **and** other facts making an inference of conspiracy plausible, and

not merely possible*.  See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 396-98

(3d Cir. 2015); *Utesch*, 316 F. Supp. 3d at 903 (dismissing 10(b) claims based on anticompetitive

conduct where complaint lacked "direct evidence of an agreement, such as a document or

conversation explicitly manifesting the existence of the agreement in question"); *Superior*

*Offshore*, 738 F. Supp. 2d at 510 ("Circumstantial evidence of parallel business conduct is

probative but not sufficient to establish a proscribed anti-competitive agreement among market

participants.").

Plaintiff does not attempt to allege facts that would constitute direct evidence of an

agreement to fix prices.  Plaintiff thus resorts to asserting that a few circumstances "support the

conclusion that Defendants acted through agreements to fix prices and allocate market share."

(¶ 153.)  However, the Amended Complaint concedes that the market for each challenged

product "was an oligopoly controlled by a handful of manufacturers" (¶ 155), and the Third

Circuit has explained that courts "have been cautious in accepting inferences [of anticompetitive

conspiracy] from circumstantial evidence" in such markets.  *In re Flat Glass Antitrust Litig.*, 385

F.3d 350, 358 (3d Cir. 2004).  This is because "any rational decision [by an oligopolist] must

take into account the anticipated reaction of [] other firms."  *Valspar Corp. v. E.I. Du Pont De*

*Nemours*, 152 F. Supp. 3d 234, 240 (D. Del. 2016), *aff'd sub nom. Valspar Corp. v. E.I. Du Pont*

*De Nemours & Co.*, 873 F.3d 185 (3d Cir. 2017) (quotation and citations omitted).  Their

"interdependence" means that oligopolists may, acting unilaterally and without any agreement

between them, each decide that they are better off following a competitor's price increase rather

10

than attempting to grow market share.  Supreme Court precedent holds that, in an oligopoly (as is alleged here), such "follow-the-leader" or "lock-step" pricing does not plausibly suggest conspiracy because it is economically rational behavior for an oligopolist acting in its own independent business interest.  *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) (conscious parallelism "describes the process, not in itself unlawful, by which firms in a concentrated market might in effect share monopoly power, setting their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions").

<strong>a.  Parallel Conduct Does Not Establish Illegal Or<br>Anticompetitive Conduct</strong>

Plaintiff bases its allegations of collusive price increases on a "statistical analysis" which it claims establishes that Endo implemented price increases "in lock-step with competitors." (¶¶ 95-97; *see also* ¶¶ 98-145.)  But as noted above, in oligopolistic markets such as those Plaintiff alleges here, lock-step pricing does not suggest collusive behavior because it is also entirely consistent with (indeed, an expected consequence of) lawful, independent pricing decisions.  It is therefore black-letter law that allegations of parallel price increases by competitors—or "conscious parallelism"—"cannot by itself 'create a reasonable inference of conspiracy'" because "[p]arallel conduct is 'just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.'" *Valspar*, 152 F. Supp. 3d at 240-41 (quotation omitted); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 227 (3d Cir. 2011) (same).  Indeed, the Supreme Court has reversed the denial of a motion to dismiss where plaintiffs' conspiracy allegations were based on parallel conduct alone. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Because "lock-step" price increases, "conscious parallelism," and "supra-competitive prices" can be characteristics of non-

11

collusive markets, these alleged facts do not plausibly state a claim for conspiracy.  *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 366 (S.D.N.Y. 2016).  Plaintiff's "lock-step" price increase theory fails to state a claim.

> **b.  Market Conditions And Profit Motive Do Not Establish Illegal Or Anticompetitive Conduct**

Plaintiff next asserts that markets for the products at issue "are all characterized by factors that . . . present the opportunity for agreements to fix prices and allocate market share." (¶ 154.)  However, even if the factors that Plaintiff alleges—"high market concentration," (¶¶ 155-157), "high barriers to market entry," (¶¶ 158-159), "lack of alternative products," (¶ 160) and "demand inelasticity" (¶¶ 161-162)—were sufficient to render the markets more *conducive* to conspiracy, such allegations "do[] not create a reasonable inference of concerted action because [they] merely restate[] interdependence," which is inherent in oligopolistic markets.  *See In re Chocolate Confectionary*, 801 F.3d at 398 (holding that simply because "oligopolistic markets are conducive to price fixing and will often exhibit behavior that would not be expected in competitive markets," such market factors do not give rise to an inference of an unlawful agreement).  These factors cannot support a reasonable inference of illegal price-fixing.

Plaintiff similarly argues that Endo and its peers had a "common motive to conspire to increase profits."  (¶¶ 169-171.)  But, of course, "[i]n a free capitalistic society, all entrepreneurs have a legitimate understandable motive to increase profits."  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999).  Thus, allegations of motivation to increase profits "are precisely the [type of] legally insufficient facts [that the Third Circuit has] cautioned against using as circumstantial evidence of an agreement."  *Burch*, 662 F.3d at 229.

c.      **Opportunity To Communicate With Competitors Does Not Establish Illegal Or Anticompetitive Conduct**

The Amended Complaint further speculates that Plaintiff "identified a multitude of trade shows and conferences that afforded Endo and Par employees an *opportunity* to interact with their counterparts at other manufacturers" (¶ 172 (emphasis added)), and that these trade shows therefore must have been "used to facilitate agreements to fix prices." (¶ 173.) Here again, the law is flatly contrary. "[P]roof of *opportunity* to conspire, without more, will not sustain an inference that a conspiracy has taken place." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc.*, 998 F.2d 1224, 1235 (3d Cir. 1993) (emphasis added). Moreover, courts have long recognized that interactions among competitors, no matter how frequent, do not suffice to establish conspiracy. *Burtch*, 662 F.3d at 228 ("[F]requent meetings between the alleged conspirators . . . will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement.") (citation omitted); *Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008) ("[m]embership in a trade association, without more, does not violate the antitrust laws"); *In re Baby Food Antitrust Litig.*, 166 F.3d at 126 ("communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise").[5] Plaintiff's "opportunity" theory fails.

---

[5] Further, to support allegations of a price fixing conspiracy, price increases must be temporally related to the alleged conspiratorial conversations. *See Resco Prods. Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406, 424 (W.D. Pa. 2016). Other than a conclusory statement that "many [trade shows and conferences] occurred in close proximity to . . . price increases" (¶ 172), and a simple list of industry events and attendees untethered to the products at issue (Appendix A), Plaintiff fails entirely to allege which products were discussed at which event, which events yielded anticompetitive agreements, what those agreements were, or which firms actually participated. *Cf. InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 162-63 (3d Cir. 2003) (providing examples of direct evidence of price-fixing, such as "a memorandum produced by a defendant conspirator detailing the discussions from a meeting of a group of alleged conspirators").

13

> **d.    Plaintiff's Inadequate Allegations That Endo Acted Against Its Self-Interest Do Not Establish Illegal Or Anticompetitive Conduct**

Finally, Plaintiff offers the conclusory assertion that raising prices was against Endo's self-interest as "risky and unsustainable" because "if one generic drug marketer raises its prices significantly above those of its competitors, that competitor will lose market share." (¶¶ 163-166.)  This also fails to support a claim.

The Third Circuit has expressly held that "[d]eciding not to follow a price increase initiated by a rival is *just one* rational response that an oligopolist can take, a fact acknowledged by economists." *In re Chocolate Confectionary*, 801 F.3d at 401 (emphasis added).  Initiating or maintaining price increases while competitors do the same—as Plaintiff alleges that Endo did here—is another equally rational response. *See id.* at 397 ("[O]ligopolists may maintain supracompetitive prices through rational, interdependent decision-making, as opposed to unlawful concerted action, if the oligopolists independently conclude that the industry as a whole would be better off by raising prices.").

At most, Plaintiff's allegations reflect a disagreement with Endo's decisions to maintain prices at a level consistent with other companies, rather than to lower them.  But mere disagreement with, or second-guessing of, a company's business judgment does not support a securities fraud claim. *See Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 655 (S.D.N.Y. 2015) (finding an "unorthodox" business decision did not give rise to a claim); *In re Sierra Wireless*, 482 F. Supp. 2d 365, 379 (S.D.N.Y. 2007) (finding even "ill-advised" or "bad business decisions are not actionable under the securities laws.").

None of Plaintiff's allegations establishes that price-fixing occurred, or that defendants made a false or misleading statement by not disclosing it.

14

4.      **Many Challenged Statements Are Inactionable As "Puffery,"
Forward-Looking Statements, And Opinions**

In addition, many statements challenged by Plaintiff are inactionable as "puffery,"

forward-looking statements, and opinions.[6]

a.      **Statements Of "Puffery" Are Inactionable**

Several statements cited by Plaintiff are inactionable as a matter of law because they are

general expressions of corporate optimism, or "puffery."  These statements are inactionable

because they are "too general to cause a reasonable investor to rely upon them."  *Bldg. Trades*

*United Pension Tr. Fund v. Kenexa Corp.*, No. CIV.A. 09-2642, 2010 WL 3749459, at *11 (E.D.

Pa. Sept. 27, 2010) (quotation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1420, 1427 (3d Cir. 1997) ("Claims that these kinds of vague expressions of hope by

corporate managers could dupe the market have been almost uniformly rejected by the courts.").

Endo's statements that it faced "intense competition" (¶¶ 188, 205), saw a product as a

"strong source of new growth" (¶¶ 191, 194), operated in an "intensely competitive" market

(¶ 208), "maintain[ed an] opportunistic approach to supply and demand imbalances" (¶ 192), had

"impressive revenue growth" and "meaningful margin gains" through "greater manufacturing

efficiencies, favorable mix and through the optimization of pricing" (¶ 196), was "prudent and

opportunistic" (¶ 199), made "value creating acquisitions" (¶ 201), and faced "steep and rapid

price erosion" (¶ 212), are all textbook statements of puffery that cannot form the basis of a

securities claim.  *See Galati*, 220 F. App'x at 102 (statements about "dramatic" growth

"constitute nothing more than mere 'puffery'"); *In re Incyte S'holder Litig.*, No. CV 13-365,

---

[6] Endo's statement that it "believe[s] the recently issued CDC guidelines will continue to put
pressure on a[n] already soft pain market" (¶ 212), is a statement of opinion and is therefore not
actionable because Plaintiff has not shown it was both objectively false (*e.g.*, incorrect) and
subjectively false (*e.g.*, the speaker did not believe it).  *See Pfizer*, 754 F.3d at 170.

2014 WL 707207, at *14 (D. Del. Feb. 21, 2014) (descriptions of product launch as "going

well," and response to new product as "encouraging," not actionable); *Kenexa Corp.*, 2010 WL

3749459, at *11-12 (statements regarding "solid" growth, market share, and performance in the

face of strong competition constitute puffery).

**b.     Forward-Looking Statements Are Inactionable Under The PSLRA "Safe Harbor"**

Plaintiff also challenges two inactionable forward-looking statements.  Under the PSLRA

"safe harbor," forward-looking statements, including "plans and objectives" and "projection[s],"

15 U.S.C. § 78u-5(i)(1), are immunized from liability if (i) the statement "is identified as such

and accompanied by meaningful cautionary language," (ii) it "is immaterial," or (iii) "the

plaintiff fails to show [that] the statement was made with actual knowledge of its falsehood."

*Globus Med.,* 869 F.3d at 245 (quotation omitted); 15 U.S.C. § 78u-5(c).  A forward-looking

statement is protected by the safe harbor if any prong applies.  *See id.*

Here, Endo's statement that it "will maintain [an] opportunistic approach to supply and

demand imbalances" (¶ 192) and its prediction that "recently issued CDC guidelines will

continue to put pressure on [an] already soft pain market" (¶ 212) are classic examples of the

types of plans and projections that are protected by the safe harbor.  *See Pension Fund Grp. v.

Tempur-Pedic Intern., Inc.*, 614 F. App'x 237, 246 (6th Cir. 2015) (statement that a trend "will

continue" is protected by the safe harbor).  Moreover, each is accompanied by meaningful

cautionary language, and "where a future-looking statement is accompanied by sufficient

cautions, then the state of mind of the individual making the statement is irrelevant, and the

statement is not actionable regardless of the plaintiff's showing of scienter."  *OFI Asset Mgmt. v.*

16

*Cooper Tire & Rubber*, 834 F.3d 481, 502 (3d. Cir. 2016) (citation and quotation marks omitted).[7]

### D.     Plaintiff's Section 10(b) Claim Should Be Dismissed For Failure To Establish A "Strong Inference" Of Scienter

To state a Section 10(b) claim, a plaintiff must "state with *particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind," *i.e.*, with scienter. *See* 15 U.S.C. § 78u-4(b)(2) (emphases added).  Scienter is an "intent to deceive, manipulate, or defraud."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  This requires facts establishing an intent to engage in securities fraud—*not* merely an intent to participate in the underlying business activity.  *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676 (3d Cir. 2011) (finding no scienter despite "long-lasting" price fixing conspiracy that "affected a substantial portion of [defendant's] business").

The Third Circuit has held that "motive and opportunity may no longer serve as an independent route to scienter."  *Gold v. Ford Motor Co.*, 577 F. App'x 120, 123 (3d Cir. 2014) (citation omitted).  Instead, a plaintiff must plead a "strong inference" of recklessness or "conscious misbehavior."  *Id.*  This is a demanding standard under which "omissions and ambiguities count against inferring scienter."  *Tellabs*, 551 U.S. at 326.  A plaintiff must do more than allege "facts from which . . . a reasonable person *could* infer that the defendant acted with the required intent," for that "does not capture the stricter demand Congress sought to convey[.]"  *Id.* at

---

[7] Cautionary language included in Endo's SEC filings includes:  "[T]here continues to be a potential negative impact on the U.S. pharmaceutical business that could result from pricing pressures or controls" (Ex. 2, Endo Annual Report (Form 10-K), at 53 (March 2, 2015)); "We may experience pricing pressure on the price of our products due to social or political pressure to lower the cost of drugs, which would reduce our revenue and future profitability" (Ex. 3, Endo Annual Report (Form 10-K), at 31 (Feb. 29, 2016)); and "We are subject to various regulations pertaining to the marketing and pricing or our products and services" (Ex. 4, Endo Quarterly Report (Form 10-Q), at 47 (May 6, 2016)).

314 (emphasis added).  Rather, to be strong, the inference of scienter must be "more than merely

plausible or reasonable—it must be cogent and at least as compelling as any opposing inference[.]"

*Id.*  Plaintiff does not meet that standard.

### 1.     Plaintiff Alleges No Conscious Misbehavior Or Recklessness

Where, as here (for reasons explained below), there is an absence of motive, allegations

of recklessness or conscious misbehavior must be "correspondingly greater."  *GSC Partners*

*CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (citation omitted).  Conscious

misbehavior or recklessness allegations require "not merely simple, or even inexcusable,

negligence, but an extreme departure from the standards of ordinary care" that "presents a danger

of misleading [investors] that is either known to the defendant or is so obvious that the defendant

must have been aware of it."  *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 613 (E.D. Pa. 2009)

(quotation marks omitted).  Plaintiff does not come close to meeting this standard as to any

defendant.

As an initial matter, the Amended Complaint fails to "detail specific contemporaneous

data or information known to the defendants that was inconsistent with the representation[s] in

question."  *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y 2001) (citation

omitted).  Plaintiff alleges only that the individual defendants were personally and actively

involved in the management of Endo's generics business, including price increases.  (¶¶ 36, 40-

44, 89-94, 222-29.)  But it is hardly surprising that senior executives were actively involved in

pricing strategy.  Wholly absent are any allegations that these individuals participated in, or even

knew of, a scheme to fix prices—no allegations that they participated in any meetings,

discussions, or communications in furtherance of such a scheme, or even a single fact showing

that these defendants ever spoke to a competitor. *See Utesch*, 316 F. Supp. 3d at 906 ("It is one

thing to say that" senior executives "were aware of the Generic Drug's price increases.  It is

another to infer that, due to these price increases [the senior executives] must have known the
reason for the increases was due to a price-fixing conspiracy with other major pharmaceutical
companies.").[8]  General allegations of active management are plainly insufficient to support
scienter.  *See Solomon-Shrawder v. CardioNet, Inc*., No. CIV.A. 09-3894, 2010 WL 3168366, at
*12 (E.D. Pa. Aug. 10, 2010) (finding no conscious misbehavior or recklessness where plaintiff
alleged "no facts" suggesting that defendants knew of an alleged fraudulent scheme); *In re Axis
Capital*, 456 F. Supp. 2d at 592 (rejecting scienter where plaintiffs "utterly fail[ed]" to plead the
existence of an anticompetitive scheme).

       That Plaintiff alleges no facts establishing scienter comes as no surprise because they rely
on CWs who have no basis to opine on that topic.  None "are described in the complaint with
sufficient particularity to support the probability that a person in the position occupied by the
source would possess the information alleged."  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp*., 394
F.3d 126, 146 (3d Cir. 2004) (citation omitted).  All six CWs worked for *Qualitest*, a particular
Endo business unit, not at Endo.  (*See* ¶¶ 89-94.)  Four held positions that suggest they could not
possibly have had relevant information:  CW-1 is vaguely described as an "Inside Sales
Representative" (¶ 89); CW-2 is a "Manager of Government Contracts" (¶ 90); CW-3 is listed an
"Accountant" and a "contractor" who worked for less than a year (¶ 91); and CW-4 was a
summer "trainee" for three months in 2015.  (¶ 92.)  *See In re Hertz Glob. Hldgs, Inc. Sec. Litig.*,
No. CIV.A. 13-7050, 2015 WL 4469143, at *15 (D.N.J. July 22, 2015) (discounting allegations
from "regional, low-level" employees "who provide[d] their anecdotal experience concerning

_____

[8] Although the Amended Complaint alleges Qualitest pricing analysts "had access" to a "rough
idea" of competitors' prices, (¶ 94), there are no allegations that any such information was ever
shared with Endo management.

sales" where the complaint included "no allegations [to] connect these confidential witness'
knowledge and beliefs to [the company's]").

Moreover, *none of the CWs is alleged to have ever communicated with—or even met—
any of the individual defendants*.  This, too, is fatal to any effort to establish scienter based on
these CWs.  *See Jackson v. Halyard Health, Inc.*, No. 16-CV-05093-LTS, 2018 WL 1621539, at
*9 (S.D.N.Y. Mar. 30, 2018) (dismissing claims where complaint failed to allege that CWs
attended any meetings with individual defendants where alleged issues were discussed); *Glaser
v. The9, Ltd.*, 772 F. Supp. 2d 573, 594-95 (S.D.N.Y. 2011) (finding CWs could not support
scienter where they were not alleged to have ever had any contacts with individual defendants
and could only speculate as to their mental state).

### 2.        Plaintiff Alleges No Motive To Engage In Securities Fraud

Even if motive and opportunity were sufficient to plead scienter—which they are not—
Plaintiff fails to allege any compelling motive whatsoever.  Plaintiff offers the notion that Endo
was motivated to keep its stock price high in order to fund the acquisition of Par and DAVA.
(¶¶ 237-41.)  This theory fails for at least three reasons.

*First*, the desire to maintain stock price is merely a generalized motive common to all
companies, and is insufficient to establish fraudulent intent.  *See GSC Partners*, 368 F.3d at 237;
*see also In re Amarin Corp. PLC*, 13-CV-6663 (FLW)(TJB), 2015 WL 3954190, at *11 (D.N.J.
June 29, 2015) (finding insufficient allegations of motive "to continue [the company's]
success"); *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 584 (D.N.J. 2001) ("the
allegation that Defendants made false and misleading statements to secure market share is
similarly insufficient to demonstrate Defendants had a motive to commit fraud").

*Second*, Plaintiff fails to allege that any individual defendant personally benefited from
the purported fraud.  A plaintiff may not plead motive and opportunity by relying on "[m]otives

that are generally possessed by most corporate directors and officers," but must instead "assert a concrete and personal benefit to the individual defendants resulting from [the] fraud." *GSC Partners*, 368 F.3d at 237 (citation omitted). Here, Plaintiff does not allege any stock sales by senior executives—typically a hallmark of securities fraud—or any other concrete personal benefits. *See In re Advanta Sec. Litig.*, 180 F.3d 525, 540 (3d Cir. 1999), *abrogated on other grounds by Tellabs*, 551 U.S. 308 (2007) (a lack of insider stock sales "during the class period, rais[es] doubt whether the [other defendants'] sales were motivated by an intent to profit from inflated stock prices"); *In re PDI Sec. Litig.*, 02-Civ-0211 (GEB), 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2016) ("the fact that Defendants did not sell a single share of their own stock during the Class Period effaces Plaintiffs' assertions about Defendants' motives").[9]

*Third*, Plaintiff's theory of motive makes no sense. According to the Amended Complaint, Endo supposedly engaged in price fixing in order to inflate the value of its generics portfolio—and consequently, Endo's stock—to fund the acquisition of smaller generics companies that were engaged in the same price fixing scheme. (¶¶ 125-45.) Plaintiff thus advances the curious theory that Endo falsely inflated its own stock in order to fund the acquisition of two other companies whose values it knew were also falsely inflated while also knowing that these inflated valuations would be short-lived. Such a scheme is facially implausible and fails to meet the standard set forth in *Tellabs*. *See Tellabs*, 551 U.S. at 314 (requiring an inference of scienter that is "more than merely plausible or reasonable"); *see also Winer Family Tr. v. Queen*, 503 F.3d 319, 329 (3d Cir. 2007) (affirming dismissal where plaintiff's allegations were "neither cogent, nor compelling, nor strong").

---

[9] Plaintiff's mention that Mr. Campanelli, when he was CEO of Par, was "paid nearly $70 million in consideration from Endo's acquisition of Par" is a *non sequitur*. (¶ 58.) It is has nothing to do with Endo's pricing decisions.

### 3.     The More Compelling Inference Is Non-Fraudulent

The Supreme Court requires courts considering a motion to dismiss to evaluate whether a plaintiff's scienter allegations are "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  Here, Plaintiff has alleged no fact establishing any anticompetitive conduct or price-fixing conspiracy.  All of its pricing allegations are equally indicative of rational business judgments in a competitive market.  The more compelling inference is that Endo, like any profit-seeking company, adjusted the prices for its products based on market forces and myriad other considerations.  When circumstances changed, Endo's generics performance was negatively impacted.  *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *21 (S.D.N.Y. Sept. 28, 2012) (finding a "market-wide downturn" to be a more compelling inference than fraud).  And when Endo timely disclosed that downturn, its stock price declined and Plaintiff cast about for a theory on which to sue, landing upon the AGs' antitrust litigation that Plaintiff tries to transform into a securities fraud claim.  But Plaintiff fails to plead the facts necessary to state such a claim, and it should therefore be dismissed.

## II.    PLAINTIFF'S "CONTROL PERSON" CLAIMS UNDER SECTION 20(A) OF THE EXCHANGE ACT SHOULD BE DISMISSED FOR FAILURE TO ESTABLISH A PREDICATE VIOLATION

Plaintiff asserts a "control person" claim under Section 20(a) of the Exchange Act.  To state a Section 20(a) claim, Plaintiff must plead a predicate Section 10(b) claim.  *Pfizer*, 754 F.3d at 177.  Because Plaintiff's Section 10(b) claim fails as a matter of law, its Section 20(a) claim must also be dismissed.  *See id.* (affirming dismissal of Section 20(a) claims where Section 10(b) claims were dismissed).

## <u>Conclusion</u>

The Amended Complaint fails to state a claim as a matter of law.  It should be dismissed, with prejudice.

Dated:  September 14, 2018

Respectfully submitted,

LATHAM & WATKINS LLP

  s/ Jeff G. Hammel
Miles N. Ruthberg (admitted *pro hac vice*)
James E. Brandt (admitted *pro hac vice*)
Jeff G. Hammel (admitted *pro hac vice*)
Thomas J. Giblin (admitted *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1260
Facsimile: (212) 751-4864
miles.ruthberg@lw.com
james.brandt@lw.com
jeff.hammel@lw.com
thomas.giblin@lw.com


J. Gordon Cooney, Jr. (No. 42636)
Laura Hughes McNally (No. 310658)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
gordon.cooney@morganlewis.com
laura.mcnally@morganlewis.com

*Attorneys for Defendants*