# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDRE PELLETIER, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>   vs. <br><br> ENDO INTERNATIONAL PLC, et al., <br><br>        Defendants. | Civ. Action No. 2:17-cv-05114-MMB <br><br> <u>CLASS ACTION</u> <br><br> Honorable Michael M. Baylson <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO LEAD PLAINTIFF AND CO-LEAD PLAINTIFFS |

# TABLE OF CONTENTS

Page

I.     OVERVIEW ................................................................................................1

II.    PROCEDURAL HISTORY.........................................................................3

III.   NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH
       RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY
       APPROVAL ORDER..................................................................................7

IV.    THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL.....................9

       A.    Lead Plaintiff, Co-Lead Plaintiffs, and Plaintiffs' Counsel Have More
             Than Adequately Represented the Class..................................................11

       B.    The Settlement Negotiations Were Conducted at Arm's-Length and Under
             the Oversight of an Experienced Mediator .........................................13

       C.    The Settlement Is Adequate Considering the Costs, Risks, and Delay of
             Trial and Appeal ..........................................................................15

             1.    Risks of Establishing Liability and Damages ...........................15

             2.    Risks Relating to Endo's Financial Condition..........................17

             3.    The Settlement Falls Well Within the Range of Reasonableness.............19

       D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors...........................20

             1.    The Proposed Method for Distributing Relief Is Effective.......................20

             2.    The Requested Attorneys' Fees Are Reasonable......................................21

             3.    The Parties Have No Other Agreements Besides an Agreement to
                   Address Requests for Exclusion .................................................21

             4.    Class Members Will Be Treated Equitably, and the Reaction of the
                   Class Supports Final Approval .................................................21

V.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION..........................22

VI.    THE REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF
       EXPENSES SHOULD BE APPROVED ..........................................................23

       A.    Attorneys' Fees Should Be Awarded Based on a Percentage of the
             Common Fund ...........................................................................24

       B.    The Requested Fee Is Presumptively Reasonable Because It Was
             Negotiated by Lead Plaintiff...................................................25

**Page**

C.    The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors ................26

1.    The Size of the Common Fund Created and the Number of Persons
Benefited by the Settlement ...................................................................26

2.    Reaction of Class Members to the Fee Request...........................................27

3.    The Skill and Efficiency of Counsel ...........................................................28

4.    The Complexity and Duration of the Litigation ........................................30

5.    The Risk of Non-Payment ...........................................................................31

6.    The Significant Time Devoted to This Case..............................................31

7.    The Range of Fees Typically Awarded ......................................................32

D.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check .....................33

E.    Reasonably Incurred Litigation Expenses Should Be Reimbursed ......................34

F.    Plaintiff Awards Pursuant to 15 U.S.C. §78u-4(a)(4)...........................................35

VII.    CONCLUSION..............................................................................................................37

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995)...........................................................................34

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
  No. 03-1519 (AET), 2013 WL 12153597
  (D.N.J. Jan. 30, 2013) ....................................................................................32

*Alves v. Main*,
  No. 01-789 (DMC), 2012 WL 6043272
  (D.N.J. Dec. 4, 2012),
  *aff'd*, 559 F. App'x 151 (3d Cir. 2014)..........................................................13

*Bing Li v. Aeterna Zentaris, Inc.*,
  No. 3:14-cv-07081-PGS-TJB, 2021 WL 2220565
  (D.N.J. June 1, 2021) ...............................................................................19, 37

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................24, 25

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-905 (MF), 2011 WL 1344745
  (D.N.J. Apr. 8, 2011) ................................................................................14, 36

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534
  (S.D.N.Y. Oct. 16, 2019) ................................................................................22

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)..............................................................................9

*Fanning v. Acromed Corp.*,
  No. 1014, 2000 WL 1622741
  (E.D. Pa. Oct. 23, 2000)..................................................................................25

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)..................................................................... *passim*

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).............................................................................33

*Grier v. Chase Manhattan Auto. Fin. Co.*,
  No. CIV. A. 99-180, 2000 WL 175126
  (E.D. Pa. Feb. 16, 2000).................................................................................25

**Page**

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)........................................................................26, 27, 28

*Hall v. Accolade, Inc.*,
   No. CV 17-3423, 2020 WL 1477688
   (E.D. Pa. Mar. 25, 2020) ........................................................................................25

*Harshbarger v. Penn Mut. Life Ins. Co.*,
   No. CV 12-6172, 2017 WL 6525783
   (E.D. Pa. Dec. 20, 2017) ........................................................................................26

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)................................................................................................26

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
   No. 2:12-cv-07243-NIQA, 2019 WL 4140784
   (E.D. Pa. Aug. 29, 2019)....................................................................................28, 31

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
   No. 8:15-cv-00865 (C.D. Cal.) ..............................................................................30

*Huffman v. Prudential Ins. Co. of Am.*,
   No. 2:10-cv-05135, 2019 WL 1499475
   (E.D. Pa. Apr. 5, 2019) ..........................................................................................17

*In re Aetna Inc.*,
   No. MDL 1219, 2001 WL 20928
   (E.D. Pa. Jan. 4, 2001) ......................................................................................13, 32

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   No. 05-232, 2008 WL 4974782
   (E.D. Pa. Nov. 21, 2008)........................................................................................18

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006)...............................................................................33, 35

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...........................................................................25, 26, 27

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)....................................................................................25

*In re CIGNA Corp. Sec. Litig.*,
   No. 02-8088, 2007 WL 2071898
   (E.D. Pa. July 13, 2007)................................................................................. *passim*

**Page**

*In re FAO Inc. Sec. Litig.*,
No. 03-6596, 2015 U.S. Dist. LEXIS 144693
(E.D. Pa. Oct. 23, 2015)........................................................................23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................................................................25

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)........................................16, 32, 33, 35

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)..................................................................23

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) .......................................................18

*In re Lucent Techs., Inc., Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ................................................30, 35

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
No. 05-1151 (SRC)(CLW), 2016 WL 11575090
(D.N.J. June 28, 2016) ...........................................................................35

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. 08-cv-285 (DMC), 2010 WL 547613
(D.N.J. Feb. 9, 2010)........................................................19, 22, 33

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
No. 08-397(DMC)(JAD), 2013 WL 5505744
(D.N.J. Oct. 1, 2013)...............................................................32, 35, 36

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
No. 12 1893 (MAS)(TJB), 2016 WL 5844319
(D.N.J. Oct. 3, 2016)...............................................................................19

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015),
*amended*, No. 2:12-md-02323-AB, 2015 WL 12827803
(E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d. Cir. 2016)....................13

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091
(D.N.J. July 29, 2013).................................................................. *passim*

*In re Philips/Magnavox Television Litig.*,
No. 09-3072(CCC), 2012 WL 1677244
(D.N.J. May 14, 2012) ............................................................................13

**Page**

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*,
148 F.3d 283 (1998)................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).......................................................33, 34

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-1432 (DMC) (JAD), 2012 WL 1964451
(D.N.J. May 31, 2012).......................................................22, 31, 34

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-cv-1099 (DMC), 2010 WL 1257722
(D.N.J. Mar. 26, 2010)................................................................11

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. 08-397(DMC)(JAD), 2013 WL 5505744
(D.N.J. Oct. 1, 2013)................................................................35-36

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 3:15-cv-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020),
*rep. & rec. adopted*, No. 15-7658 (MAS)(LHG), 2021 WL 358611
(D.N.J. Feb. 1, 2021)................................................................18

*In re Veritas Software Corp. Sec. Litig.*,
396 F. App'x 815 (3d Cir. 2010) ...................................................32, 34

*In re Vicuron Pharms., Inc. Sec. Litig.*,
512 F. Supp. 2d 279 (E.D. Pa. 2007) ...............................................19

*In re Viropharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108
(E.D. Pa. Jan. 25, 2016) ..................................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)................................................... *passim*

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
No. 2:06-cv-01797-MSG, 2015 WL 12843830
(E.D. Pa. Oct. 15, 2015)................................................................32

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
No. 08-00235 (CCC), 2019 WL 4877563
(D.N.J. Oct. 3, 2019)................................................................12

*McDermid v. Inovio Pharms., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020) ...............................................12

Page

*Moore v. GMAC Mortg.*,
   No. 07-4296, 2014 WL 12538188
   (E.D. Pa. Sept. 19, 2014) ...................................................................33

*Rowe v. E.I. DuPont de Nemours & Co.*,
   No. 06-1810(RMB/AMD), 2011 WL 3837106
   (D.N.J. Aug. 26, 2011)........................................................................26

*Steele v. Welch*,
   No. 03-942, 2005 WL 3801469
   (E.D. Pa. May 20, 2005) .....................................................................15

*Stevens v. SEI Invs. Co.*,
   No. 18-4205, 2020 WL 996418
   (E.D. Pa. Feb. 28, 2020).....................................................................34

*Whiteley v. Zynerba Pharms., Inc.*,
   No. 19-4959, 2021 WL 4206696
   (E.D. Pa. Sept. 16, 2021) ...................................................................32

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-cv-8020-FLW-TJB, 2016 WL 6661336
   (D.N.J. Nov. 10, 2016)........................................................................35

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §77z-1(a)(4) .......................................................................................36
   §78j(b)..................................................................................................3
   §78t(a)..................................................................................................3
   §78u-4(a)(4) ..............................................................................*passim*
   §78u-4(a)(6) .......................................................................................23
   §78u-4(a)(7) .........................................................................................8

Page

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................8
    Rule 23(c)(2)(B) ...........................................................................................7, 8, 9
    Rule 23(e) ........................................................................................................1, 7
    Rule 23(e)(1)(B) ...................................................................................................7
    Rule 23(e)(2) ............................................................................................ *passim*
    Rule 23(e)(2)(A) ..........................................................................................11, 12
    Rule 23(e)(2)(B) .................................................................................................13
    Rule 23(e)(2)(C)(i) .............................................................................................15
    Rule 23(e)(2)(C)(ii)-(iv) .....................................................................................20
    Rule 23(e)(2)(D) ..........................................................................................20, 21
    Rule 23(e)(3) ......................................................................................................10
    Rule 23(f) .............................................................................................................5
    Rule 23(h) ...........................................................................................................23

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* ........................20

Lead Plaintiff Bucks County Employees Retirement System ("Lead Plaintiff" or "Bucks County ERS") and Co-Lead Plaintiffs Alexandre Pelletier and Nathan Dole (together with Lead Plaintiff, the "Plaintiffs")[1] respectfully submit this memorandum of law in support of their motion for final approval of the $63.4 million all-cash settlement (the "Settlement"); the Plan of Allocation; an award of attorneys' fees; an award of litigation expenses; and awards to Lead Plaintiff Bucks County ERS and Co-Lead Plaintiffs Pelletier and Dole for their work on behalf of the Class.

## I.   OVERVIEW

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs seek final approval of an all-cash settlement of this action in the amount of $63.4 million, which represents the full amount of the remaining directors' and officers' insurance proceeds.  This Settlement, which resulted from arm's-length mediation overseen by the Honorable Layn R. Phillips (Ret.), represents an exceptional recovery for the Class and should be approved.  The Settlement followed a lengthy and hard-fought litigation, including extensive document discovery; numerous depositions; extensive discovery, briefing, and argument concerning class certification; the exchange of detailed expert reports on loss causation and damages; and extensive summary judgment briefing as to liability.  Through these efforts and the Court's comprehensive decisions at the motion to dismiss and class certification stages, Plaintiffs' counsel gained a full understanding of all of the relevant issues, which they brought to bear in negotiating and ultimately agreeing to the Settlement.  Further, the Settlement was attained while Defendant Endo International plc ("Endo" or the "Company") is in a precarious financial situation due to massive, unresolved liabilities asserted in nationwide opioid litigation and other business difficulties facing the Company.

---

[1]     Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), dated October 15, 2021 (ECF No. 395). All internal citations are omitted unless otherwise indicated.

The Settlement easily satisfies the requirements of Rule 23(e)(2), meets each of the *Girsh* factors,[2] and balances the objective of attaining the highest possible recovery against the risks and costs of continued litigation.  This includes the risk that, as in any complex case, the Class could receive nothing, or a far lower sum, after trial and any appeals, particularly in light of Endo's tenuous financial condition.  Additionally, the Plan of Allocation set forth in the Notice should be approved because it treats Class Members equitably and ensures that each Class Member that properly submits a valid Proof of Claim will receive a *pro rata* share of the monetary relief.

Lead Counsel's request for an award of attorneys' fees and litigation expenses, and Plaintiffs' requests for class representative awards pursuant to 15 U.S.C. §78u-4(a)(4), are reasonable and well within the range approved in similar matters, and should be approved as well.  Plaintiffs' counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation might last or whether there would ultimately be any recovery.  At each stage of the litigation, Plaintiffs' counsel faced off against highly sophisticated defense counsel. Since this suit was filed over four years ago, Plaintiffs' counsel successfully opposed Defendants' motion to dismiss as to the vast bulk of Plaintiffs' claims, obtained class certification, completed discovery from Defendants and numerous third parties, and extensively briefed their opposition to Defendants' motion for summary judgment on liability.  Further, discovery in this case was massive: Defendants produced over one million pages of documents, third parties produced over 190,000 pages, 15 current or former Endo employees and directors were deposed, and detailed expert reports were exchanged and expert depositions taken concerning loss causation and damages.  Plaintiffs' counsel also engaged in multiple rounds of mediation and negotiations overseen by former Judge Phillips.  All of this work resulted in the superb result presented here for final approval.

---

[2]     *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

Plaintiffs thus respectfully request final approval of the proposed Settlement, Plan of Allocation, attorney's fees and expenses, and class representative awards.

## II.    PROCEDURAL HISTORY

Over four years ago, on November 14, 2017, Alexandre Pelletier filed the initial complaint in *Pelletier v. Endo International plc, et al.*, No. 2:17-cv-05114 (E.D. Pa.).  ECF No. 1.  On June 19, 2018, the Court appointed Park Employees' Annuity and Benefit Fund of Chicago ("Park") as Lead Plaintiff, and Bleichmar Fonti & Auld LLP ("BFA" or "Prior Lead Counsel") as Lead Counsel.  ECF No. 58.

On August 6, 2018, then-Lead Plaintiff Park filed the Amended Class Action Complaint ("Amended Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934.  ECF No. 62.  The Amended Complaint alleged that the Defendants had made fraudulent and misleading statements that "purported to inform investors about the competitive environment, the sources of their generics revenue, or the basis of their pricing decisions, but obscured or omitted material information about the same topics."[3]  The Amended Complaint also alleged, as "an independent and separate basis for falsity," that Defendants had failed to disclose that they were engaged in an illegal price-fixing conspiracy.  *See, e.g.*, ECF No. 62, ¶186.  The Amended Complaint alleged that as the truth was revealed through a series of public disclosures, the price of Endo's stock fell substantially, causing significant economic harm to Class Members.

On September 14, 2018, Defendants moved to dismiss the Amended Complaint.  ECF No. 63.  After the parties fully briefed Defendants' motion, the Court issued a memorandum and order on February 14, 2020 sustaining the claims set forth in the Amended Complaint other than those related to Defendants' alleged price-fixing conspiracy.  ECF Nos. 93-94.

---

[3]    Memorandum denying in part and granting in part Defendants' motion to dismiss (ECF No. 93) at 22.

After the Court decided the motion to dismiss, discovery moved forward. Defendants produced over one million pages of documents, and third parties produced over 190,000 pages. On the motion of then-Lead Plaintiff, which Defendants opposed, the Court issued an order on June 22, 2020 compelling Defendants to produce certain board of directors materials. ECF Nos. 108, 110, 114. The Court resolved additional discovery disputes between then-Lead Plaintiff and Defendants on July 20, 2020. ECF Nos. 122, 125.

On June 26, 2020, then-Lead Plaintiff moved for class certification, after which an opposition, reply, sur-reply, and additional briefing requested by the Court were filed. ECF Nos. 116, 133, 152, 172, 174-175. Expert reports were exchanged and expert depositions were taken on topics relevant to class certification.

On December 15, 2020, the Court issued an order indicating that it was considering replacing Park as Lead Plaintiff. ECF No. 218. The Court also issued an order permitting Bucks County ERS to submit a Lead Plaintiff motion, and Bucks County ERS moved for appointment as Lead Plaintiff on January 11, 2021. ECF Nos. 241, 247. The Court also permitted Alexandre Pelletier and Nathan Dole to submit a renewed Lead Plaintiff motion, and they did so on January 7, 2021. ECF Nos. 238, 243.[4] On February 4, 2021, the Court issued an order that then-Lead Plaintiff Park and then-Lead Counsel BFA would no longer act in those respective capacities in this case. The Court appointed Bucks County ERS as Lead Plaintiff, and appointed its counsel Lawrence F. Stengel of Saxton & Stump as Lead Counsel and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Co-Lead Counsel. The Court further appointed Alexandre Pelletier and Nathan Dole as Co-Lead Plaintiffs, and their counsel, Pomerantz LLP ("Pomerantz"), as Counsel for Co-Lead Plaintiffs. ECF Nos. 272-273.

---

[4]     The January 7, 2021 motion also proposed Wayne A. Wingard as a Lead Plaintiff, and the Court appointed Mr. Wingard as a Co-Lead Plaintiff on February 4, 2021. ECF No. 273. On April 12, 2021, the Court granted Mr. Wingard's motion to withdraw as Co-Lead Plaintiff. ECF No. 316.

After the Court's February 4, 2021 order, fact discovery advanced at an accelerated pace. Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs conducted an extensive and expedited review of the more than one million pages of documents previously produced by Defendants and over 190,000 pages of documents previously produced by third parties, and analyzed the depositions of five former Endo employees who had already been deposed by Prior Lead Counsel. After getting up to speed on the relevant facts in this complex matter, Co-Lead Counsel Robbins Geller deposed ten additional current or former Endo employees and directors over a condensed timeframe, from April 26, 2021 through June 16, 2021. Prior Lead Counsel assisted with the transition of the case file, provided extensive prior work product, and participated in several conference calls about discovery and case strategy.

In addition, discovery related to class certification advanced, including depositions of a representative of Bucks County ERS, a representative of Bucks County ERS's investment manager, and Co-Lead Plaintiffs Pelletier and Dole. Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs also analyzed the detailed expert reports that had previously been produced, and the expert depositions that had previously taken place, concerning issues relevant to class certification. Plaintiffs filed a supplemental brief and related materials in support of the motion for class certification on March 4, 2021, Defendants filed a response on April 8, 2021, and Plaintiffs filed a reply brief on April 20, 2021. ECF Nos. 305, 315, and 318. Oral argument on class certification was held on April 29, 2021. ECF No. 328. On May 10, 2021, at the Court's request, the parties submitted additional briefing in support of their positions on class certification. ECF Nos. 336-337.

On May 20, 2021, the Court issued a comprehensive, 84-page memorandum and order granting class certification. ECF Nos. 340-341. Defendants then filed a Rule 23(f) petition to the Court of Appeals for permission to appeal the Court's class certification order, Plaintiffs filed an opposition to that petition, and the Court of Appeals denied Defendants' petition on July 14, 2021.

Defendants also moved for the modification or reconsideration of the Court's class certification order, Plaintiffs opposed that motion, and Defendants filed a reply in support of their motion. ECF Nos. 361, 380, and 386. That motion had not been decided when the Court stayed this matter to allow the parties to focus on settlement negotiations.

After further discovery, Defendants moved for summary judgment as to liability on June 23, 2021. ECF No. 350. In support of their motion, Defendants filed a 102-page statement of facts. ECF No. 351. Plaintiffs filed their opposition on July 14, 2021, including a 168-page response to Defendants' statement of facts, and a 46-page statement of additional facts. ECF Nos. 363-365. At Lead Counsel's and Co-Lead Counsel's request, Prior Lead Counsel provided substantive comments on the Plaintiffs' summary judgment opposition papers. Defendants filed their reply on July 28, 2021, including a 146-page response to Plaintiffs' statement of additional facts, and a 237-page reply in further support of their statement of facts. ECF Nos. 377-379. This briefing, in combination with the extensive fact discovery that had already taken place, gave counsel for both sides a comprehensive understanding of the arguments for and against Defendants' liability in this matter.

While summary judgment briefing concerning liability was underway, the parties also pursued discovery as to loss causation and damages. Plaintiffs produced an expert report on loss causation and damages on June 29, 2021; Defendants produced an expert report in response on July 16, 2021; Plaintiffs produced a rebuttal expert report on July 27, 2021; and Defendants' and Plaintiffs' experts were deposed on July 23, 2021, and July 30, 2021, respectively. This discovery highlighted complex and, in some cases, highly technical economic arguments for and against loss causation and damages associated with stock price activity on the disclosure dates at issue.

Given the extensive discovery in this matter, the Court's decisions on the motion to dismiss and the motion for class certification, the parties' extensive summary judgment briefing, the expert reports and depositions on loss causation and damages, and Lead Counsel's, Co-Lead Counsel's, and

Counsel for Co-Lead Plaintiffs' extensive experience in securities fraud cases and trials, Plaintiffs had a detailed understanding by the time of the Settlement of what key witnesses would testify to, the critical issues to be proven at trial, and the relative strengths and weaknesses of Plaintiffs' claims and Defendants' defenses.

The parties also engaged in arm's-length settlement discussions, including extensive mediation overseen by former federal judge Layn R. Phillips.  The parties ultimately asked the Court to stay proceedings as of August 5, 2021 to allow the parties to focus their attention and efforts on settlement discussions, and the Court granted a stay of 60 days.  ECF No. 390.  Further extensive negotiations followed, including the mediator's recommendation that the parties settle for the amount ultimately agreed to: $63.4 million.

On October 15, 2021, Plaintiffs filed a Motion for Preliminary Approval of Settlement, the Stipulation of Settlement, and a supporting Declaration.  ECF Nos. 394-396.  The Court entered an Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") on October 25, 2021.  ECF No. 397.  As detailed below, notice has been provided to the Class in accordance with the Court's Preliminary Approval Order.  Counsel for Defendants mailed the required notices under the Class Action Fairness Act on October 25, 2021.  ECF No. 398. Objections to, or requests to be excluded from, the proposed settlement are due by February 2, 2022, and the Court will hold the Settlement Hearing on February 23, 2022, at 11:00 a.m.  ECF No. 397.

## III.   NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY APPROVAL ORDER

Rule 23(e), which governs notice requirements for class action settlements, provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires that a certified

class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice and Summary Notice were approved by the Court in the Preliminary Approval Order (ECF No. 397), and fully comply with Rule 23.  Among other disclosures, the Notice apprises Class Members of the nature of this litigation, the definition of the Class, the claims and issues in the litigation, and the claims that will be released in the Settlement.  The Notice also: (i) advises that a Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Class Members; (iii) states the procedures and deadline for Class Members to exclude themselves from the Class or to object to the proposed Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Proof of Claim; and (v) provides the date, time, and location of the Settlement Hearing.  In addition, the Notice and Summary Notice satisfy the Private Securities Litigation Reform Act of 1995's ("PSLRA") disclosure requirements (15 U.S.C. §78u-4(a)(7)) by stating, among other things: (i) the amount of the Settlement determined in the aggregate on an average per-share basis; (ii) that the Settling Parties[5] do not agree on the average amount of damages per-share that would be recoverable if Plaintiffs prevailed at trial, and stating the issues on which the Settling Parties disagree; (iii) that Plaintiffs' counsel intend to apply for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Plaintiffs' counsel; and (v) the reasons the Settling Parties are proposing the Settlement.  The contents of the Notice and Summary Notice therefore satisfy all applicable requirements.

In the Preliminary Approval Order, the Court found that this notice program satisfies, in form and content, "the requirements of Rule 23 and due process, and is the best notice practicable under

---

[5]      *See* Stipulation (ECF No. 395), ¶1.44.

the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto." Preliminary Approval Order, ¶4.  The notice program has since been carried out.  The Claims Administrator, Angeion Group, LLC ("Angeion"), commenced mailing the Notice and the Proof of Claim form on November 15, 2021 to all Class Members who could be reasonably identified, along with approximately 2,749 securities brokers and other financial institutions whose clients may be Class Members.  *See* Declaration of Jenny Shawver of Angeion ("Shawver Decl."), ¶6.  As a result of these efforts, approximately 90,391 Notice packets have been sent to potential Class Members. *Id.*, ¶7.  On November 15, 2021, Angeion published the Summary Notice in *The Wall Street Journal* and over *PR Newswire*, and posted copies of the Notice, Proof of Claim, Stipulation, and Preliminary Approval Order on the website maintained for the Settlement, www.EndoSecuritiesLitigation.com. *Id.*, ¶¶10, 12.  Angeion supplemented these forms of notice with a paid online search and social media program.  *Id.*, ¶11.

This combination of notice by mail to all Class Members who could be identified with reasonable effort, supplemented by publication in a widely-circulated newspaper, over a newswire, and on a website, is typical of notice plans in securities class actions, and constitutes "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also, e.g.*, *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *5 (E.D. Pa. Jan. 25, 2016). Moreover, the notice program here went a step further by providing notice through social media and online search advertisements.

## IV. THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL

It is well established that the settlement of class action litigation is favored.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting that the "strong presumption in favor of voluntary settlement agreements" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (Baylson, J.) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").  Rule 23(e)(2) identifies the following factors to be considered at final approval:

> (2) Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) the terms of any proposed award of attorney's fees including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

These factors are considered alongside, and largely overlap with, those set forth by the Third Circuit in *Girsh*:

> (1) the complexity, expense and likely duration of the litigation . . .; (2)  the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

521 F.2d at 157.[6]  The Third Circuit has also explained that there is an initial presumption that a settlement is fair if: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *Warfarin*, 391 F.3d at 535.

As detailed below, each of these factors supports final approval of the Settlement.

### A.   Lead Plaintiff, Co-Lead Plaintiffs, and Plaintiffs' Counsel Have More Than Adequately Represented the Class

The first factor under Rule 23(e)(2) concerns the adequacy of representation provided by the class representatives and class counsel.  *See* Rule 23(e)(2)(A).  This overlaps with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *See Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (noting similar considerations for applying presumption of fairness).

The Court has expressed confidence in the abilities of Lead Plaintiff, Co-Lead Plaintiffs, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs to pursue this litigation, first by appointing each to their respective positions (ECF No. 272 at 24-25), and then by certifying the Class, which included an assessment that Plaintiffs and Plaintiffs' counsel are able to fairly and adequately represent the Class's interests (ECF No. 340 at 41-47).  The Court's confidence was well-placed, as Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs have vigorously pursued this litigation.  Among many other undertakings, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs engaged in extensive document review, deposed ten current or former Endo employees and directors, analyzed the depositions of former Endo employees deposed by Prior Lead Counsel, defended the depositions of class representatives, filed multiple briefs and engaged in oral argument in support of class certification, achieved class certification, opposed

---

[6]   The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair."  *In re Schering-Plough/Merck Merger Litig.*, No. 09-cv-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

Defendants' motion to reconsider class certification, produced an expert report and rebuttal expert report on loss causation and damages, deposed Defendants' expert on loss causation and damages, opposed Defendants' motion for summary judgment as to liability, and engaged in settlement negotiations and mediation led by former Judge Phillips.  At each of these stages, Plaintiffs' counsel successfully advanced this case.

Plaintiffs' counsel brought substantial litigation experience to this case.  As the Court stated in appointing Lead Counsel, Lawrence Stengel "has been a distinguished judge, and Chief Judge of this Court, and previously served as a judge of the Court of Common Pleas of Lancaster County." ECF No. 272 at 24.  Further, Robbins Geller and Pomerantz have successfully prosecuted hundreds of securities class actions on behalf of investors.  *See, e.g.*, *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 281 (E.D. Pa. 2020) (approving Robbins Geller as lead counsel and Saxton & Stump as local counsel; stating that "Robbins Geller is a preeminent litigation firm with a record of winning complex securities class actions"); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-00235 (CCC), 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action"); *see also* ECF Nos. 396-3, 396-4, 396-5 (resume of Lawrence Stengel and firm resumes of Robbins Geller and Pomerantz).  In addition, Lead Plaintiff Bucks County ERS is a sophisticated institutional investor that oversees approximately $1 billion of investments on behalf of its beneficiaries, and its support for the Settlement carries substantial weight as well.  *See* Declaration on Behalf of Bucks County ERS ("Bucks County Decl."), ¶2.

Plaintiffs and Plaintiffs' counsel have thus adequately represented the Class under Rule 23(e)(2)(A), and have secured "an adequate appreciation of the merits of the case" by means of substantial discovery and litigation.  *See Warfarin*, 391 F.3d at 597.  "[C]ourts in this Circuit

traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"  *Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *see also Viropharma*, 2016 WL 312108, at *11 (stating that courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, No. 2:12-md-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d. Cir. 2016).[7]  Bringing their experience and knowledge of this case to bear, Lead Plaintiff, Co-Lead Plaintiffs, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs all believe that the Settlement is in the best interests of the Class.

### B.     The Settlement Negotiations Were Conducted at Arm's-Length and Under the Oversight of an Experienced Mediator

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's-length.  *See* Rule 23(e)(2)(B); *see also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness).

The Settling Parties engaged in extensive arm's-length negotiations, including mediation conducted by the Honorable Layn R. Phillips (Ret.), a former U.S. Attorney, former U.S. District Court judge, and perhaps the most prominent and experienced mediator of securities class actions. Prior to the appointment of current Lead Plaintiff and Co-Lead Plaintiffs, Prior Lead Plaintiff and

---

[7]     *See also In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 323 (1998) (identifying "the extent of discovery on the merits" as a relevant factor in evaluating class action settlements); *In re Philips/Magnavox Television Litig.*, No. 09-3072(CCC), 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("'Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.'"); *In re Aetna Inc.*, No. MDL 1219, 2001 WL 20928, at *7 (E.D. Pa. Jan. 4, 2001) ("That Defendants' summary judgment motions were ripe for decision at the time of the settlement further demonstrates that the parties had fully assessed the merits of the case prior to settlement.").

Defendants engaged in two mediation sessions with former Judge Phillips in February 2019 and November 2020.  In advance of both mediations, the parties submitted detailed opening and reply mediation statements.  The parties negotiated in good faith, but were unable to reach a resolution at either mediation, as the parties' positions remained too far apart.

Settlement discussions resumed after new Lead Plaintiff, Co-Lead Plaintiffs, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs had the opportunity to fully inform themselves about the facts of the case.  On the day that the parties were scheduled to argue summary judgement, at the parties' request, the Court stayed proceedings for 60 days as of August 5, 2021, to allow the parties to focus on settlement discussions.  During that stay, Judge Phillips worked closely with the parties to achieve a settlement in this matter.  These negotiations were protracted, complex, and challenging, and included detailed discussions about Endo's financial condition.  Lead Counsel and Co-Lead Counsel also engaged experienced bankruptcy counsel at Lowenstein Sandler LLP to evaluate how best to protect the interests of the Class in the context of a potential Endo bankruptcy. After extensive discussions and negotiations, the mediator recommended a settlement of $63.4 million, the full amount of remaining directors' and officers' insurance proceeds, and the Settling Parties ultimately agreed to settle the case for that amount.

The mediator's direct participation helps ensure that negotiations were non-collusive and conducted at arm's-length.  *See Viropharma*, 2016 WL 312108, at *11 (approving settlement after arm's-length negotiation overseen by former Judge Phillips after parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery"); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'"); *CIGNA*, 2007 WL 2071898, at *3 (Baylson, J.) (approving settlement where it was "clear that negotiations for the settlement occurred at arm's

length, as the parties were assisted by a retired federal district judge who was privately retained and served as mediator"); *Steele v. Welch*, No. 03-942, 2005 WL 3801469, at *1 (E.D. Pa. May 20, 2005) (Baylson, J.) (approving settlement that was "arrived at after hard bargaining before a highly respected federal jurist"). This factor thus weighs strongly in favor of approving the Settlement.

### C.  The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal

The third factor under Rule 23(e)(2), which overlaps with several of the *Girsh* factors (*i.e.*, factors 1, 4-9), concerns the adequacy of the Settlement in light of the costs, risks, and delay that trial and appeal would impose. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). "Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This case was filed over four years ago, and undoubtedly faces many risks and delays were litigation to continue, including at summary judgment, trial, and appeal. At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Class Member receives a financial recovery.

### 1.  Risks of Establishing Liability and Damages

Lead Plaintiff and Co-Lead Plaintiffs believe that their case is strong but acknowledge that there would be risks involved in further litigation. Defendants have maintained, for example, that their statements with respect to Endo's generic drug pricing practices were accurate and were not false or misleading. *See, e.g.*, ECF No. 354 at 3-16; ECF No. 379 at 3-13. Among other arguments on that score, Defendants have argued Endo's relevant drug pricing information was publicly available. *See* ECF No. 354 at 13. Defendants have also argued that the element of scienter has not been met because, among other reasons, none of the individual Defendants sold stock to profit from the alleged fraud, and some increased their Endo stock holdings during the Class Period. *See, e.g.*, *id.* at 19-25; ECF No. 379 at 13-15. Defendants also argued in opposing class certification and in their motion for reconsideration of class certification that there is no link between the alleged

misconduct and Endo's stock price declines on the relevant disclosure dates, and that the Class Period should therefore be curtailed or eliminated.  *See* ECF No. 315 at 12-15; ECF No. 361-1 at 4-8.  While the Court held in granting class certification that these "loss causation arguments" are "inappropriate for class certification," ECF No. 340 at 56, the Court went on to note that "the parties will have to grapple with [loss causation] on the merits."  *Id.* at 65 n.18.

At trial, expert testimony would have been critical to establish loss causation and damages. Defendants' expert would have marshalled various arguments against loss causation and damages as to each of the disclosure dates at issue; Plaintiffs' expert would have defended his own conclusions on those topics; and each expert's testimony would have relied on complex and, in some cases, highly technical economic arguments.  Such a "battle of the experts" would have necessarily involved substantial expenses and risks.  *See Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (Baylson, J.) (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict.").

While there are strong responses to these arguments, they pose undeniable risks.  Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or

even eliminated.[8]  Moreover, any trial victory for Plaintiffs would likely have been appealed by Defendants, which at a minimum would have resulted in substantial delays before any financial recovery.  The risks associated with establishing liability and damages at trial, and preserving any trial victory through appeal, thus weigh in favor of approving the Settlement.

### 2.    Risks Relating to Endo's Financial Condition

The financial recovery under the Settlement is even more impressive, and the risks of proceeding through trial and appeal are all the more apparent, when Endo's precarious financial condition is taken into account.  *See Girsh*, 521 F.2d at 157 (whether or not defendants can withstand a greater judgment is a relevant factor).  Endo faces massive opioid-related liabilities, and the Company reported in its most recent Form 10-Q filing: "We have not been able to settle most of the opioid claims made against us and, as a result, we are exploring a wide array of potential actions" which "could include a bankruptcy filing which, if it were to occur, would subject us to additional risks and uncertainties that could adversely affect our business prospects and ability to continue as a going concern."[9]  Endo has engaged a restructuring adviser, and credible reporting supports Endo's acknowledgement that the Company may go bankrupt in the near term.[10]

Endo also faces other financial risks and business difficulties.  On December 15, 2021, the U.S. Food and Drug Administration rejected Endo's petition to block the approval of a competitor's alternative to Vasostrict, Endo's best-selling drug, and announced its intention to refer Endo's filing

---

[8]    *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

[9]    Endo Form 10-Q filed Nov. 5, 2021, at 23.

[10]    *See* Alexander Gladstone, *Drugmaker Endo Taps Restructuring Adviser Over Opioid Litigation*, The Wall Street Journal (Aug. 20, 2021), https://www.wsj.com/articles/endo-pharmaceuticals-taps-restructuring-adviser-over-opioid-litigation-11629460801; Zeng Feng Chhee, *Endo International: The End May Be Near*, Seeking Alpha (Aug. 24, 2021), https://seekingalpha.com/article/4451516-endo-international-stock-the-end-may-be-near.

of a petition to block that alternative to the U.S. Federal Trade Commission as potentially constituting anticompetitive business practices.[11]  In addition, Endo's difficulties have been reflected in its stock price.  During the Class Period, Endo's stock price reached over $93 per share, but it dropped to below $16 per share by August 6, 2018, when the Amended Complaint was filed.  Since then, Endo's stock price has dropped even further, falling to below $4 per share.

These facts weigh strongly in favor of approving the Settlement.  *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG, 2020 WL 3166456, at *8 (D.N.J. June 15, 2020) ("Valeant's uncertain financial condition and ability to withstand a larger judgment is an additional risk that weighs in favor of approving Settlement."), *rep. & rec. adopted*, No. 15-7658(MAS)(LHG), 2021 WL 358611 (D.N.J. Feb. 1, 2021); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *8 (E.D. Pa. Nov. 21, 2008) ("Continuing to trial in the hopes of o[b]taining a higher penalty would merely deplete the insurance policy proceeds. . . . This factor weighs heavily in favor of settlement."); *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 647 (D.N.J. 2004) (finding that "[t]he decline in Lucent's financial condition" strongly supported approval of settlement).  Due to Endo's deteriorating financial condition, and the declining balance of the available insurance proceeds due to defense costs, there is a high probability that a future recovery would be lower than the present Settlement, even if Plaintiffs were to prevail across the board at trial and on appeal.  Especially in light of Endo's financial difficulties, the Settlement represents a highly favorable outcome for the Class.

---

[11]     *See* Dania Nadeem, *U.S. FDA Approves Eagle's Generic Version of Endo Blood Pressure Drug*, Reuters (Dec. 15, 2021), https://www.reuters.com/business/healthcare-pharmaceuticals/us-fda-approves-eagles-generic-version-blood-pressure-drug-2021-12-15/; Adam Lidgett, *FDA Tosses Par Pharma's Anti-Generic Bid, Vows FTC Referral*, Law360 (Dec. 16, 2021), https://www.law360.com/articles/1449235/fda-tosses-par-pharma-s-anti-generic-bid-vows-ftc-referral.

### 3.    The Settlement Falls Well Within the Range of Reasonableness

*Girsh* requires the Court to evaluate the proposed Settlement alongside "a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and . . . in light of all the attendant risks of litigation (the ninth factor)."  *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285 (DMC), 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) ("*Merck/Vytorin*").  In making a "range of reasonableness" assessment, courts do not need to make a precise estimate of damages.  *See In re N.J. Tax Sales Certificates Antitrust Litig.*, No. 12 1893 (MAS)(TJB), 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016) (granting final approval where "it is not possible to predict the precise value of damages that Plaintiffs would recover if successful").  Here, Endo's market capitalization has declined precipitously from its Class Period high, and the Company has publicly stated that it is considering bankruptcy,[12] which could turn any favorable outcome after trial and appeal into a hollow victory.  Nor is it possible to quantify precisely the risks to recovery posed by Defendants' arguments as to falsity, materiality, scienter, loss causation, and damages, which are described above.

The recovery under the Settlement – $63.4 million – far surpasses many securities class action settlements in this Circuit involving pharmaceutical companies, and is clearly within the range of reasonableness.  *See, e.g.*, *Bing Li v. Aeterna Zentaris, Inc.*, No. 3:14-cv-07081-PGS-TJB, 2021 WL 2220565, at *1 (D.N.J. June 1, 2021) (noting approval of settlement of $6.5 million); *Viropharma*, 2016 WL 312108, at *14-*15 (approving settlement of $8 million); *Par Pharm.*, 2013 WL 3930091, at *9, *11 (approving settlement of $8.1 million); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 281-82 (E.D. Pa. 2007) (approving settlement of $12.75 million).  In addition, the recovery here is several times larger than the median securities class action settlement

---

[12]    *See supra* note 9.

values over the last ten years, which range from $7 million to $13 million.[13]  Because the theoretical "best possible recovery" is significantly constrained by Endo's financial condition, the $63.4 million Settlement – every remaining dollar available under the applicable insurance policies – represents the best reasonably attainable outcome for the Class in this case.  That is why Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs, based on their experience and expertise, accepted the mediator's recommendation and agreed to settle this case for that amount.

### D.     The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors are met here.

### 1.     The Proposed Method for Distributing Relief Is Effective

The proposed methods of notice and claims administration process are effective and provide the Class Members with the necessary information to receive their *pro rata* share of the Settlement Fund.  The notice and claims processes are similar to those commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided.  *See supra* §III (describing notice process); Declaration of Steven Weisbrot of Angeion, ECF No. 396-2, ¶29 & Ex. B (describing claims administration process).

---

[13]     Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2021), Fig. 15 at 17, *available at* https://www.nera.com/publications/archive/2021/recent-trends-in-securities-class-action-litigation--2020-full-y.html.  These figures exclude settlements in excess of $1 billion, merger objections, and settlements for no monetary recovery, and are adjusted for inflation.  *Id.*

### 2.    The Requested Attorneys' Fees Are Reasonable

As set forth in §VI, *infra*, Plaintiffs' counsel's request for an award of attorneys' fees is reasonable and appropriate.  Further, because this is an all-cash settlement that has already been fully funded, there is no real risk that counsel will be paid but Class Members will not.

### 3.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

As discussed in connection with the motion for preliminary approval, Plaintiffs and Defendants have entered into a supplemental agreement which provides that Defendants will have the right to terminate the Settlement in the event that valid requests for exclusion from the Class exceed the criteria set forth in that agreement.  This is a standard practice for cases of this type, and the parties have no other agreements.

### 4.    Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval

Rule 23(e)(2)(D) requires the Court to consider whether Class Members will be treated equitably.  All Class Members will be treated equitably under the terms of the Stipulation, which provides that each Class Member that properly submits a valid Proof of Claim form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Further, out of the thousands of potential Class Members, there have been no objections or requests for exclusion to date.  Shawver Decl., ¶¶16-17.  To the extent that any objections to the Settlement are made subsequent to this filing, they will be addressed in Plaintiffs' reply.

Each factor identified in Rule 23(e)(2) and the Third Circuit's *Girsh* opinion is satisfied.  Moreover, pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness. 391 F.3d at 535.  Given the litigation risks involved, the complexity of the underlying issues, and Endo's financial condition, the $63.4 million recovery pursuant to the Settlement is outstanding, and could not have been achieved without the commitment of Plaintiffs and the hard work of Plaintiffs' counsel.  Lead Plaintiff, Co-Lead Plaintiffs, Lead Counsel, Co-Lead Counsel, and Counsel for Co-

Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## V.       THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Notice contains a Plan of Allocation, which details how the Settlement proceeds are to be divided among Class Members who submit claims.  *See* ECF No. 395-2 (Notice), ¶¶35-47.  "The '[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'"  *Merck/Vytorin*, 2010 WL 547613, at *6.  In determining whether a plan of allocation is fair, reasonable, and adequate, "courts give great weight to the opinion of qualified counsel."  *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving plan of allocation).  "As numerous courts have held, a plan of allocation need not be perfect" and "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'"  *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

Here, the proposed Plan of Allocation is fair and reasonable.  The Plan of Allocation was prepared with the assistance of Co-Lead Counsel Robbins Geller's in-house economic consultant, and is based on the economic analysis of Plaintiffs' loss causation and damages expert.  *See* Declaration of Lead Counsel Lawrence F. Stengel ("Stengel Decl."), ¶14.  The calculations were based primarily on that expert's event study analysis, which estimated the amount of artificial inflation in the prices of Endo shares during the Class Period.  *Id*.  The Plan of Allocation calls for the distribution of the Settlement Fund on a *pro rata* basis, as determined by the ratio between each valid claim and the sum of all valid claims.  *See* Notice, ¶40.  The calculation of each claim will depend upon several factors, including when the securities were purchased, acquired, sold, or held.

*See id.*, ¶36.  Once each claim is calculated and verified, and the distribution ratio is determined, the Net Settlement Fund (*i.e.*, the Settlement amount after the deduction of Notice and Administration Expenses, Taxes and Tax Expenses, and all Court-approved attorney's fees, litigation expenses, and class representative awards) shall be distributed to Authorized Claimants who are entitled to a distribution of at least $10.00.  *Id.*, ¶40.  Any amount remaining following the initial distribution will be further distributed among Authorized Claimants to the extent economically feasible.  *Id.*, ¶45.  If further re-distribution of funds remaining in the Net Settlement Fund would not be cost effective, the Plan of Allocation calls for any remaining balance to be contributed to Community Legal Services of Philadelphia.[14]

This method of distributing settlement funds is fair and reasonable.  *See, e.g.*, *Par Pharm.*, 2013 WL 3930091, at *8 (approving similar plan of allocation); *Viropharma*, 2016 WL 312108, at *15 (same).  For all of these reasons, the Plan of Allocation should be approved.

## VI.  THE REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).  The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case.  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

---

[14]     *See* Notice, ¶45; *see also In re FAO Inc. Sec. Litig.*, No. 03-6596, 2015 U.S. Dist. LEXIS 144693 (E.D. Pa. Oct. 23, 2015) (Baylson, J.) (approving Community Legal Services of Philadelphia as *cy pres* recipient in nationwide securities class action); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, ECF No. 293 (E.D. Pa. April 22, 2016) (Baylson, J.) (same).

Here, Plaintiffs' counsel request attorneys' fees of 25% of the Settlement Amount and litigation expenses of $1,839,050.39, plus interest earned on these amounts at the same rate and for the same period as earned by the Settlement Fund.  Per the Stipulation, Lead Counsel will allocate the attorneys' fees among Plaintiffs' counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and resolution of the litigation. Stipulation, ¶6.2.  Lead Counsel will also oversee allocation of the expense award based upon each firm's actual outlays.  Also, Lead Plaintiff Bucks County ERS and Co-Lead Plaintiff Pelletier seek awards of $17,000 each, and Co-Lead Plaintiff Dole seeks an award of $15,000, in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

These requests are fair and reasonable, and well within the range of fees, expenses, and class representative awards typically granted in similar matters.  The Settlement is an exceptional result for the Class in the face of significant risks.  This case involved substantial outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery.  Further, Plaintiffs' counsel brought substantial experience to their work on this case, and skillfully overcame defense counsel's determined opposition.  For these reasons, and those detailed below, Lead Plaintiff and Co-Lead Plaintiffs respectfully request that these attorneys' fees, expenses, and class representative awards be approved.

## A.    Attorneys' Fees Should Be Awarded Based on a Percentage of the Common Fund

It is well established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Vivopharma*, 2016 WL 312108, at *15 (same).  "Courts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for

generating the valuable fund bestowed on the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The Supreme Court has recognized that it is appropriate to award counsel a reasonable percentage of the common fund as a fee.  *See Boeing*, 444 U.S. at 478-79.  This is because the percentage method aligns counsel's interests with those of the Class.  The lodestar method, by contrast, has been criticized in the class action context for incentivizing billing "excessive hours" and drawing out litigation, while failing to incentivize lawyers to seek the largest recovery possible. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) ("*Cendant I*").  Courts in this district recognize that the percentage-of-recovery method is preferred in common fund cases because it rewards counsel for success and penalizes it for failure.  *Hall v. Accolade, Inc.*, No. CV 17-3423, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020); *see also Fanning v. Acromed Corp.*, No. 1014, 2000 WL 1622741, at *5 (E.D. Pa. Oct. 23, 2000); *Grier v. Chase Manhattan Auto. Fin. Co.*, No. CIV. A. 99-180, 2000 WL 175126, at *7 (E.D. Pa. Feb. 16, 2000).  Further, the Third Circuit has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("*Cendant II*").

**B.     The Requested Fee Is Presumptively Reasonable Because It Was Negotiated by Lead Plaintiff**

Lead Plaintiff Bucks County ERS is a sophisticated institutional investor that stepped forward to lead this action when the Court decided to replace Prior Lead Plaintiff.  Due to its substantial financial interest in this case, Bucks County ERS had every incentive to, and did, negotiate a fair and reasonable fee at the outset of its involvement.  The fee requested is consistent with the terms of the retainer agreement between Bucks County ERS and Co-Lead Counsel Robbins Geller negotiated when Bucks County ERS decided to seek a leadership role in this case.  *See* Bucks County Decl., ¶6.  Co-Lead Plaintiffs also support the attorneys' fees request of 25% of the

Settlement Amount.  *See* Declaration of Alexandre Pelletier ("Pelletier Decl."), ¶14; Declaration of Nathan Dole ("Dole Decl."), ¶13.  Courts "afford a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel."  *Cendant I*, 264 F.3d at 282; *see also Viropharma*, 2016 WL 312108, at *15.  The fee that Bucks County ERS negotiated properly aligned the incentives of Plaintiffs' counsel and the Class, and was designed to maximize the Class's net recovery.  For these reasons, the requested fee should be considered presumptively reasonable.

### C.      The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors

When evaluating proposed fee awards, courts in the Third Circuit consider several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the Settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest."  *Id.*  Here, each factor supports the requested 25% fee award.

### 1.      The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement

In awarding fees, the "most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Viropharma*, 2016 WL 312108, at *16 (same).  To assess this factor, courts "'consider[] the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'"  *Harshbarger v. Penn Mut. Life Ins. Co.*, No. CV 12-6172, 2017 WL 6525783, at *3 (E.D. Pa. Dec. 20, 2017) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-1810(RMB/AMD), 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).

Here, the $63.4 million recovery is an outstanding result that provides an immediate cash recovery to a large Class of investors. This represents the full remaining amount of the directors' and officers' insurance proceeds. By contrast, if this litigation were to continue absent the Settlement, that insurance would continue to be depleted by defense costs, decreasing the likelihood of obtaining a comparable recovery in the future. The likelihood of a comparable recovery absent the Settlement is further decreased due to Endo's tenuous financial condition, discussed above. In light of these and other factors, after multiple rounds of discussions and negotiations, the mediator recommended that the Settling Parties accept a $63.4 million figure, and they ultimately did so. As discussed above, that figure is far greater than many securities class action settlements involving pharmaceutical companies that have been approved in this Circuit, and several times the median settlement values of securities class action settlements over the last ten years. *See supra* §IV.C.3.

Additionally, the "number of class members to be benefitted" by the Settlement is large, since the Class includes all persons and entities who purchased or otherwise acquired the ordinary shares of Endo from March 2, 2015 through February 27, 2017, inclusive (excluding certain limited sub-categories of purchasers and acquirers). Likely thousands of investors who bought Endo common stock during that period will benefit from the Settlement. *See supra* §III (Notice sent to approximately 90,391 potential Class Members). For these reasons, the first *Gunter* factor clearly weighs in favor of approving the negotiated fee.

### 2. Reaction of Class Members to the Fee Request

Notice of this Settlement, including the fee request, has been provided to approximately 90,391 potential Class Members. Shawver Decl., ¶7. To date, counsel have received no objections to the fee request. *Id.*, ¶17. Thus, the reaction of the Class weighs in favor of approval of the requested fee. *See Cendant I*, 264 F.3d at 235 (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors

creates a strong presumption that this factor weighs in favor of the Settlement"); *see also High St. Rehab., LLC v. Am. Specialty Health Inc.*, No. 2:12-cv-07243-NIQA, 2019 WL 4140784, at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy.").

### 3.     The Skill and Efficiency of Counsel

The third *Gunter* factor – the skill and efficiency of the attorneys involved – is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Viropharma*, 2016 WL 312108, at *16. Here, each of these considerations demonstrates the skill and efficiency of Plaintiffs' counsel and supports the requested fee.

The important work of Prior Lead Plaintiff and Prior Lead Counsel should be recognized in this respect. Among other things, Prior Lead Counsel investigated Defendants' conduct, drafted a detailed 120-page Amended Complaint, successfully opposed Defendants' motion to dismiss as to key claims, obtained over one million pages of documents from Defendants and over 190,000 pages from third parties, successfully moved to compel Defendants to produce certain board of directors materials, deposed five former Endo employees, moved for class certification, produced an expert report on topics relevant to class certification, defended that expert's deposition, and deposed Defendants' expert on the same topics. *See* §II *supra*. While the Court ultimately replaced Prior Lead Plaintiff and Prior Lead Counsel, that does not diminish Prior Lead Counsel's experience or expertise, or the importance of their work on this matter. Prior Lead Counsel also provided substantial work product to incoming counsel, and participated in several conference calls about discovery and case strategy. *See* Stengel Decl., ¶23.

After the Court replaced Prior Lead Counsel on February 4, 2021, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs immediately began intensive work on the case including preparing for trial, which at the time was scheduled for October 2021.  As set out in §II above, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs conducted an expedited review of documents and the transcripts of prior depositions, deposed ten additional current or former Endo employees and directors over a period of less than two months, filed supplemental briefing and participated in oral argument on class certification, obtained class certification and successfully opposed Defendants' petition to appeal the class certification order, opposed Defendants' motion for reconsideration of class certification, opposed Defendants' motion for summary judgment as to liability, filed a 168-page response to Defendants' statement of facts and a 46-page statement of additional facts in support of Plaintiffs' opposition to summary judgment, produced a detailed expert report and rebuttal report on loss causation and damages, defended that expert's deposition, and deposed Defendants' expert on the same topics.  Litigating these issues in a condensed timeframe required getting up to speed quickly on complex topics such as pharmaceutical drug pricing, as well as the technical economic arguments associated with demonstrating loss causation and quantifying damages.  Plaintiffs' counsel were opposed by Defendants' highly sophisticated counsel, who skillfully pressed every available argument at each stage of the litigation. Plaintiffs' counsel also engaged in multiple rounds of mediation and negotiations that ultimately resulted in a resolution of this case for the full remaining amount of the directors' and officers' insurance proceeds.

This outstanding result was only possible due to Plaintiffs' counsel's vast experience and expertise.  *See supra* §IV.A; *see also* ECF Nos. 396-3, 396-4, 396-5 (resume of Lawrence Stengel and firm resumes of Robbins Geller and Pomerantz).  Further, Robbins Geller is one of a very few firms with a demonstrated willingness to take securities class actions to trial if required to achieve

the best possible result. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, et al.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller obtaining $1.575 billion settlement after 14 years of litigation and prevailing at jury trial); *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal.) (Robbins Geller securing 2019 jury verdict in securities fraud class action).   Defendants undoubtedly considered this fact when they decided to forego further legal challenges and agreed to settle this case for $63.4 million.   Ultimately, this outstanding result is the best indicator of the skill and expertise that Plaintiffs' counsel brought to this matter. *See In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 436 (D.N.J. 2004) ("Indeed, 'the results obtained' for a class evidence the skill and quality of counsel.").

### 4.    The Complexity and Duration of the Litigation

As detailed in §II and VI.C.3 *supra*, this litigation has spanned more than four years and involved massive document discovery; 15 depositions of Endo employees and directors; full briefing on Defendants' motion to dismiss; discovery and extensive briefing regarding Plaintiffs' motion for class certification; extensive briefing regarding Defendants' motion for summary judgment on liability; and detailed expert reports and depositions at the class certification stage and on the merits of loss causation and damages.

Each of these stages of litigation presented obstacles that Plaintiffs' counsel skillfully overcame.   In order to secure this recovery, Plaintiffs' counsel analyzed a large quantity of complex, jargon-laden documents concerning pharmaceutical drug pricing and the impact of price changes on Endo's finances; secured key admissions in depositions of Endo directors, executives, pricing specialists, and other employees; and wove the documentary and deposition evidence into a narrative demonstrating that the relevant statements were materially false and misleading.   In order to rebut Defendants' arguments that investors had access to all of the relevant information, Plaintiffs' counsel also had to become familiar with the various forms of pharmaceutical pricing information that are

available in government databases and commercial subscription services. Further, because this case involves multiple corrective disclosures, Plaintiffs' counsel had to establish that each such disclosure in fact revealed corrective information to the market, and marshalled expert opinion that the stock price declines on the relevant dates were not caused by other market-wide, industry-specific, or Endo-specific factors. Plaintiffs' and Defendants' experts also differed as to the proper measure of damages as an economic matter. In addition, bankruptcy counsel evaluated how best to protect the Class's interests in the context of a potential Endo bankruptcy.

This is only a sample of the complex issues that arose in the course of this Litigation. In light of the complexity and duration of this case, this factor clearly favors approval of the requested attorneys' fees.

### 5. The Risk of Non-Payment

Plaintiffs' counsel prosecuted this case on a contingency fee basis. Thus, without a settlement or a trial victory, they would go unpaid. This created an incentive to litigate the case aggressively and seek the best recovery possible. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *High St. Rehab.*, 2019 WL 4140784, at *13; *see also Schering-Plough I*, 2012 WL 1964451, at *7 (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

### 6. The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees. Plaintiffs' counsel collectively invested 34,574.283 hours of attorney and support staff time over the course of four years, and incurred 1,839,050.39 in expenses prosecuting this case for the benefit of the Class, without promise of payment of attorney's fees or expenses if Plaintiffs did not prevail on their claims. *See* Stengel Decl., ¶¶36-41 (setting out Lead Counsel's time and expenses, and summarizing the time and expenses of all of Plaintiffs' counsel); *see also* Declaration

of Chad Johnson of Robbins Geller ("Johnson Decl."), ¶¶4-6; Declaration of Michael Grunfeld of Pomerantz ("Grunfeld Decl."), ¶¶4-6; Declaration of Joseph Fonti of BFA ("Fonti Decl."), ¶¶4-8; and Declaration of D. Seamus Kaskela of Kaskela Law LLC (Co-Lead Plaintiffs' Pennsylvania counsel) ("Kaskela Decl."), ¶4.

### 7.    The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund."  *Whiteley v. Zynerba Pharms., Inc.*, No. 19-4959, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "fell in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also Viropharma*, 2016 WL 312108, at *17 (noting that "[i]n this Circuit, 'awards of thirty percent are not uncommon in securities class actions'") (citing cases).

Courts have frequently awarded fee percentages similar to or higher than the negotiated fee of 25% in this case, even on large recoveries.  *See, e.g., King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-01797-MSG, 2015 WL 12843830, at *5-*6 (E.D. Pa. Oct. 15, 2015) (awarding attorney's fees of 27.5% on $512 million recovery); *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-397(DMC)(JAD), 2013 WL 5505744, at *3 (D.N.J. Oct. 1, 2013) (awarding attorney's fees of 28% on $215 million recovery); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519 (AET), 2013 WL 12153597, at *1-*2 (D.N.J. Jan. 30, 2013) (awarding attorney's fees of 27.5% on $164 million recovery); *CIGNA*, 2007 WL 2071898, at *5-*6 (Baylson, J.) (awarding attorney's fees of 23% on $93 million recovery); *Aetna*, 2001 WL 20928, at *13-*16 (awarding attorney's fees of 30% on $82.5 million recovery); *Ikon*, 194 F.R.D. at 192-97 (awarding attorney's fees of 30% on $111 million recovery); *see also In re Veritas Software Corp. Sec. Litig.*, 396 F.

- 32 -

App'x 815, 818-19 (3d Cir. 2010) (affirmed attorney's fees of 30% on $21.5 million recovery). Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[15]

### D.     The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts in the Third Circuit may also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee. *See Moore v. GMAC Mortg.*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory"). If used, the lodestar cross-check "should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel cases on a contingency basis." *Ikon*, 194 F.R.D. at 193. Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

When used, the Third Circuit has recognized that the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and that "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). The lodestar cross-check involves simply comparing counsel's "lodestar" to the fee resulting from the requested percentage award and assessing the reasonableness of the resulting multiplier. The appropriate multiplier varies based on the specifics of

---

[15]     In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies. *See Merck/Vytorin*, 2010 WL 547613, at *12-*13. These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a 25% fee is lower than commonly negotiated contingent fees. *See id.*, at *13 (noting that contingent fees in the private marketplace are commonly 30% to 40%).

each case and "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." *Id.* at 307. However, the Third Circuit has recognized that percentage awards that result in multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Veritas Software*, 396 F. App'x at 819; *see also Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

Here, Plaintiffs' counsel have spent a total of 34,574.283 hours of attorney and paraprofessional time on this matter, for a total lodestar amount of $19,175,203.10. *See* Stengel Decl., ¶¶36, 41; *see also* Johnson Decl., ¶4; Grunfeld Decl., ¶4; Fonti Decl., ¶5; Kaskela Decl., ¶4. The resulting overall lodestar multiplier is 0.83, which falls within the range of reasonableness based on the cases cited above. Indeed, because the fee requested is lower than the total lodestar, this fee is more than reasonable.

## E. Reasonably Incurred Litigation Expenses Should Be Reimbursed

Plaintiffs' counsel also request payment of expenses incurred in connection with the prosecution of this litigation in the aggregate amount of $1,839,050.39. Counsel in class actions "are entitled to reimbursement of expenses that were 'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *Viropharma*, 2016 WL 312108, at *8 (quoting *Abrams v Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995); *Schering-Plough I*, 2012 WL 1964451, at *8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

The expenses borne by Plaintiffs' counsel are documented in the accompanying firm declarations. These expenses consist of the typical categories, such as experts, travel, document hosting and production, research costs, mediation fees, filing fees, postage, copying, and delivery.

*See* Stengel Decl., ¶37; Johnson Decl., ¶¶5-6; Grunfeld Decl., ¶¶5-6; Fonti Decl., ¶¶7-8.  These expenses were reasonable and necessary to the prosecution of the claims and achieving the Settlement, and are of the same type routinely approved in securities class actions.  *See Viropharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-cv-8020-FLW-TJB, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

The requested expense amount is significantly lower than the expenses approved in many other securities class actions.  *See, e.g.*, *AT&T Corp.*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151 (SRC)(CLW), 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses); *Ikon*, 194 F.R.D. at 197 (approving award of over $3.5 million in expenses); *In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621 (ECF No. 236) (D.N.J. July 23, 2004) (approving award of $3.5 million in expenses).  Further, this amount is less than the expense figure of up to $2.3 million set out in the Notice, and to date, there have been no objections to that proposed figure.  For all of these reasons, the requested expense award should be approved.

### F.     Plaintiff Awards Pursuant to 15 U.S.C. §78u-4(a)(4)

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws."  *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-397(DMC)(JAD), 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA makes clear that it does not limit "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on

behalf of a class." 15 U.S.C. §77z-1(a)(4). In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives." *Schering-Plough II*, 2013 WL 5505744, at *37; *see also Bredbenner*, 2011 WL 1344745, at *22 ("The purpose of these payments is to compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,'" and to "'reward the public service' of contributing to the enforcement of mandatory laws."). Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Lead Plaintiff Bucks County ERS and Co-Lead Plaintiff Pelletier seek awards of $17,000 each, and Co-Lead Plaintiff Dole seeks an award of $15,000, for their estimated time devoted to supervising counsel and participating in the litigation. *See* Bucks County Decl., ¶7; Pelletier Decl., ¶10; Dole Decl., ¶9. The declarations describe Lead Plaintiff's and Co-Lead Plaintiffs' activities directly related to representing the Class, including: (a) consulting with counsel regarding the litigation and the Court's orders; (b) reviewing and commenting upon pleadings, motions, and briefs; (c) reviewing correspondence and status reports from counsel; (d) responding to discovery requests and collecting documents for production; (e) preparing for and participating in depositions; (f) conferring with counsel concerning litigation strategy; and (g) monitoring settlement negotiations. *Id.*

The requested class representative awards are reasonable, and are less than or equal to awards in many similar cases. *See, e.g.*, *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, ECF No. 288 (E.D. Pa. July 13, 2007) (Baylson, J.) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.*, at *56-*57 (in related matter, approving awards to four separate lead plaintiffs totaling more than $109,000); *Par Pharm.*, 2013 WL 3930091, at *11 (approving award to

lead plaintiff of $18,000); *Aeterna Zentaris*, 2021 WL 2220565, at *2 (approving awards of $17,000 to each of the three lead plaintiffs).  The awards sought are also materially lower than the amount specified in the Notice of up to $65,000 in the aggregate, and there have been no objections to that proposed amount to date.  Plaintiffs respectfully request the proposed awards be approved.

## VII.    CONCLUSION

For all the reasons stated above and in the accompanying declarations, Plaintiffs respectfully request that the Court (i) grant their motion for final approval of the Settlement and the Plan of Allocation; (ii) award attorneys' fees of 25% of the Settlement Amount and payment of litigation expenses of $1,839,050.39, plus interest on both amounts at the same rate and for the same period as earned by the Settlement Fund; and (iii) award Lead Plaintiff Bucks County ERS and Co-Lead Plaintiff Pelletier $17,000 each, and award Co-Lead Plaintiff Dole $15,000, in connection with their representation of the Class pursuant to 15 U.S.C. § 78u-4(a)(4).

DATED:  January 19, 2022                  Respectfully submitted,

SAXTON & STUMP
LAWRENCE F. STENGEL (PA #32809)


_s/ Lawrence F. Stengel_
LAWRENCE F. STENGEL

280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: 717/556-1000
717/441-3810 (fax)
lfs@saxtonstump.com

Lead Class Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON (Admitted *pro hac vice*)
NOAM MANDEL (Admitted *pro hac vice*)
DESIREE CUMMINGS (Admitted *pro hac vice*)
JONATHAN ZWEIG (Admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com
jzweig@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (Admitted *pro hac vice*)
KEVIN A. LAVELLE (Admitted *pro hac vice*)
SEAN C. McGUIRE (Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
klavelle@rgrdlaw.com
smcguire@rgrdlaw.com

Co-Lead Class Counsel

JOSEPH J. KHAN (PA #86620)
County Solicitor, Bucks County
AMY M. FITZPATRICK (PA #324672)
First Assistant County Solicitor, Bucks County
55 East Court Street
Doylestown, PA 18901
Telephone: 215/348-6435
jjkhan@buckscounty.org
amfitzpatrick@buckscounty.org

Additional Counsel for Lead Class Representative
Bucks County Employees Retirement System

POMERANTZ LLP
JEREMY A. LIEBERMAN
MICHAEL GRUNFELD
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
10 South LaSalle Street, Suite 3505
Chicago, IL  60603
Telephone:  312/377-1181
312/377-1184 (fax)
pdahlstrom@pomlaw.com

Counsel for Co-Lead Plaintiffs