# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDRE PELLETIER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. Action No. 2:17-cv-05114-MMB |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | Honorable Michael M. Baylson |
| vs. | ) ) | DECLARATION OF LAWRENCE F. |
| ENDO INTERNATIONAL PLC, et al., | ) ) | STENGEL IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, |
| | ) | PLAN OF ALLOCATION, AWARD OF |
| Defendants. | ) ) | ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO LEAD PLAINTIFF |
| | ) | AND CO-LEAD PLAINTIFFS |

I, LAWRENCE F. STENGEL, declare as follows:

1.      I am a shareholder in the firm Saxton & Stump, LLC ("Saxton & Stump"). The Court has appointed me Lead Counsel in the above-captioned action (the "Litigation"),[1] and my client, Bucks County Employees Retirement System ("Bucks County ERS"), has been appointed Lead Plaintiff in this Litigation.  Assisting me are Co-Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Counsel for Co-Lead Plaintiffs Pomerantz LLP ("Pomerantz").

2.      I have been the lead attorney responsible for the prosecution and resolution of this Litigation since I was appointed Lead Counsel on February 4, 2021.  I am familiar with the proceedings in this Litigation, and have knowledge of the matters set forth herein based upon my involvement in this matter and my supervision of and communications with other lawyers and staff assigned to this case.  Lawyers from Robbins Geller and Pomerantz shared this responsibility with me and undertook tasks in this Litigation at my direction.  I prepared this declaration with the assistance of other lawyers at Saxton & Stump and Robbins Geller and reviewed it before signing.  I believe the information contained herein to be accurate based on information I know, as well as information provided to me by others.

3.      I submit this Declaration in support of Lead Plaintiff's and Co-Lead Plaintiffs' motion requesting final approval of the $63.4 million all-cash settlement (the "Settlement"); the Plan of Allocation; an award of attorneys' fees; an award of litigation expenses; and awards to Lead Plaintiff Bucks County ERS and Co-Lead Plaintiffs Alexandre Pelletier and Nathan Dole.

4.      The relevant facts that support final approval are set forth in the concurrently filed memorandum of law ("Final Approval Brief").  Below, I have highlighted certain facts that I view as

---

[1]     Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") dated October 15, 2021 (ECF No. 395).

particularly significant to the Settlement, the Plan of Allocation, the requested fee and expense awards, and the requested class representative awards.

## I.   THE SETTLEMENT

5.   Securities class actions are complex cases that are challenging to win and, given the stakes involved, result in defendants hiring sophisticated counsel and vigorously disputing liability and damages. This case was no exception. I firmly believe that Plaintiffs' claims are meritorious, but given the risks and delays that further litigation through trial and appeal would have entailed, I believe just as firmly that the Settlement is in the best interests of the Class.

6.   This case was hard fought by both sides, as reflected by the numerous hearings and briefs on the docket, which has over 400 entries. The parties participated in extensive discovery, including Defendants' production of over one million pages of documents and the production by third parties of over 190,000 pages, as well as 15 depositions of current and former Endo employees and directors. The parties also fully briefed Defendants' motion to dismiss, Plaintiffs' and Defendants' motions to compel the production of certain information, Plaintiffs' motion to certify the Class, and Defendants' motion for summary judgment as to liability, and benefited from the Court's comprehensive rulings at the motion to dismiss and class certification stages. The parties also exchanged detailed expert reports concerning loss causation and damages, and took depositions of those experts. All of these proceedings gave Plaintiffs' counsel a full appreciation of both the merits and weaknesses of the claims and defenses in this matter.

7.   The course of this Litigation to date makes clear that, as discussed in the Final Approval Brief, the Class would face real risks if this case proceeded to trial and appeal. For example, Defendants have argued that the statements in question were not materially false or misleading, that the relevant information concerning Endo's drug pricing was available to the public, that the individual Defendants did not act with scienter because they did not sell stock to profit from

the alleged fraud, that any losses on the corrective disclosure dates were caused by unrelated factors, and that Plaintiffs' expert incorrectly calculated damages to the Class, among many other arguments. It is likely that Defendants would have attempted to exclude Plaintiffs' expert under *Daubert* as well. While we have strong responses to these arguments, any one of Defendants' arguments, if successful, could severely curtail or even eliminate the claims at issue. Further, a trial victory for Plaintiffs would likely have been challenged by Defendants on appeal, which at a minimum would have substantially delayed any recovery for the Class.

8.      There are also risks associated with proceeding to trial and appeal related to Endo's precarious financial condition. As discussed in the Final Approval Brief, Endo's ability to withstand a larger judgment is doubtful, as the Company has disclosed in its most recent Form 10-Q filing that it is considering declaring bankruptcy. Endo faces numerous lawsuits and massive potential liabilities in connection with nationwide opioids litigation, and also recently lost a critical attempt to block the entry into the market of an alternative to Vasostrict, Endo's best-selling drug. Continued litigation would thus expose the Class to the risk of non-payment in light of Endo's tenuous financial condition, even if the Class were to prevail at trial and on appeal.

9.      The parties engaged in extensive, hard-fought, arm's-length negotiations before an experienced mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR, a former federal judge and nationally recognized mediator. Prior to my appointment as Lead Counsel, Prior Lead Counsel and Defendants engaged in two mediation sessions with Judge Phillips in February 2019 and November 2020. Prior Lead Counsel submitted detailed mediation statements to Judge Phillips prior to each of those sessions. Those attempts at mediation ended with the parties unable to reach an agreement, as their positions remained far apart.

10.     After Lead Plaintiff, Co-Lead Plaintiffs, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs were appointed and thereafter fully informed about the details of the

case, the parties resumed settlement discussions mediated by former Judge Phillips, while simultaneously preparing to litigate this case to trial.  On August 5, 2021, the same day that Defendants' motion for summary judgment as to liability was to be argued, the parties asked the Court to stay proceedings to allow the parties to focus their attention and efforts on settlement discussions, and the Court granted a stay of 60 days.  The parties used that time to engage in further negotiations overseen by the mediator.  These negotiations were complex and challenging and they involved substantial discussion about Endo's financial condition.  The mediator ultimately recommended a settlement of $63.4 million, the full amount of the remaining directors' and officers' insurance proceeds, and the Settling Parties agreed to settle the case for that amount.

11.     In light of the risks and delays associated with proceeding to trial and appeal, the Settlement, which has already been fully funded, confers a substantial benefit on the Class, and constitutes a very favorable result for the Class.

12.     Based on my experience and the experience of Co-Lead Counsel and Counsel for Co-Lead Plaintiffs in litigation and securities class actions, and our knowledge of this particular case, and after weighing the substantial benefits to the Settlement against the numerous obstacles to a better recovery after continued litigation, we have determined that the Settlement is fair, reasonable, and in the best interest of the Class.

## II.     THE PLAN OF ALLOCATION

13.     As set forth fully in the Notice, the proposed Plan of Allocation provides for the distribution of the Net Settlement Fund to Class Members who timely submit valid Proof of Claim forms.  The Plan of Allocation attempts to distribute equitably the Net Settlement Fund to Class Members who suffered economic loss as a proximate result of the alleged wrongdoing.

14.     To this end, Co-Lead Counsel Robbins Geller's in-house economic consultant used the loss causation and damages analysis performed by Dr. Steven P. Feinstein (Ph.D., CFA), the

President of Crowninshield Financial Research, Inc. and an Associate Professor of Finance at Babson College, whose report on those topics was submitted as part of expert discovery, to estimate the artificial inflation in Endo's stock price caused by the alleged misrepresentations and omissions over the course of the Class Period.

15.     Consistent with the allegations in the Amended Complaint, for a Class Member to have a Recognized Loss Amount under the Plan of Allocation, that Class Member must have purchased or acquired Endo ordinary shares during the Class Period, and held those shares until at least February 29, 2016, the date of the first alleged corrective disclosure.

16.     The method of calculating a Recognized Loss Amount, as detailed in the Notice, takes into account: (a) the statutory scheme and damages model for the claims alleged; (b) when and at what price the shares were purchased or acquired; (c) whether, when, and at what price the shares were sold; (d) whether the shares were held at the close of trading on particular dates; (e) the amount of the estimated artificial inflation per share; and (f) the PSLRA's limitation on damages pursuant to 15 U.S.C. §78u-4(e).

17.     As set forth in the Notice, under the Plan of Allocation, the Claims Administrator will assess each Authorized Claimant's overall transactions to determine its "Recognized Claim," which is the lesser of: (i) the inflation per share at the time of purchase; (b) the difference between the purchase price and the selling price; and (c) where applicable, the difference between the purchase price and the look back amount pursuant to 15 U.S.C. §78u-4(e). If the Authorized Claimant had an overall market gain, its Recognized Claim will be zero.

18.     Once Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, and any awards pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount (*i.e.*, the Net Settlement Fund) will be distributed *pro rata* to Authorized Claimants who are entitled to a distribution of at least $10.00 based on their

Recognized Claims.  If funds remain after that initial distribution, and if it is cost-effective to do, the Claims Administrator will conduct additional distributions of any remaining funds to Authorized Claimants who would be entitled to receive at least $10.00.  After any such additional distributions are complete, the Plan of Allocation calls for any remaining balance in the fund to be contributed to Community Legal Services of Philadelphia.

19.     For the reasons set forth above and in the Final Approval Brief, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs believe that the Plan of Allocation represents a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

## III.    ATTORNEYS' FEES, EXPENSES, AND LEAD PLAINTIFF AWARDS

20.     Lead Counsel respectfully requests that the Court award 25% of the $63.4 million Settlement Amount in attorneys' fees, and $1,839,050.39 in litigation expenses, plus the interest earned thereon at the same rate for the same period as that earned on the Settlement Fund until paid. Lead Counsel further requests that the Court award Lead Plaintiff Bucks County ERS and Co-Lead Plaintiff Pelletier $17,000 each, and award Co-Lead Plaintiff Dole $15,000, in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).  Lead Counsel believes that all of these amounts are reasonable and appropriate.

21.     Per the Stipulation of Settlement, I will allocate the attorneys' fees among Plaintiffs' counsel in a manner that I believe in good faith reflects the contributions of such counsel to the prosecution and resolution of the Litigation.  Stipulation, ¶6.2.  I will also oversee allocation of the expense award based upon each firm's actual outlays.

22.     The arguments and authorities supporting these requests are set forth in the Final Approval Brief.  Details concerning the time and resources expended in the research, investigation,

and prosecution of this Litigation, and additional support for the fees and expenses sought, are set forth in the declarations of each firm submitted herewith.

23.     Bleichmar Fonti & Auld LLP's ("BFA") important work on this case as Prior Lead Counsel should be recognized.  Prior Lead Counsel drafted a detailed 120-page Amended Complaint, successfully opposed Defendants' motion to dismiss as to key claims, obtained over one million pages of documents from Defendants and over 190,000 pages from third parties, successfully moved to compel Defendants to produce certain board of directors materials and the depositions of Endo's current CEO and a member of the audit committee, deposed five former Endo employees (including Defendant Upadhyay), moved for class certification, produced an expert report on topics relevant to class certification and opposed Defendants' motion to strike portions of that report, defended that expert's deposition, and deposed Defendants' expert on the same topics.  After being replaced, Prior Lead Counsel assisted with the transition of the case file, provided extensive prior work product, participated in several conference calls about discovery and case strategy, and offered substantive comments on the opposition to Defendants' motion for summary judgment as to liability.

24.     After the replacement of Prior Lead Plaintiff and Prior Lead Counsel on February 4, 2021, this Litigation proceeded at an expedited pace, as trial was scheduled at that time for October 2021.  Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs had to get up to speed quickly on complex issues, such as pharmaceutical drug pricing practices.  We conducted an expedited review of documents and the transcripts of prior depositions, deposed ten additional current or former Endo employees and directors over a period of less than two months, filed supplemental briefing and participated in oral argument on class certification, obtained class certification and successfully opposed Defendants' petition to appeal the class certification order, opposed Defendants' motion for reconsideration of class certification, opposed Defendants' motion for summary judgment as to liability, filed a 168-page response to Defendants' statement of facts

and a 46-page statement of additional facts in support of their opposition to summary judgment, produced a detailed expert report and rebuttal report on loss causation and damages, defended that expert's deposition, and deposed Defendants' expert on the same topics. Thus, in a condensed timeframe, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs analyzed and developed the factual and expert evidence to build a compelling narrative that supported liability and damages, and defended the Class's claims in numerous filings with the Court, while simultaneously keeping open the lines of communication with the mediator and Defendants regarding a possible resolution.

25.     Identifying and analyzing the most relevant evidence concerning complex issues in the pharmaceutical industry, among the massive volume of documents obtained, was a time consuming and challenging process. Plaintiffs' counsel applied their substantial experience and undertook considerable time and effort to select the best exhibits to use in mediations, depositions, class certification briefing, Plaintiffs' opposition to Defendants' summary judgment motion, and for eventual use at trial.

26.     Additionally, Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs retained and consulted with Dr. Feinstein, a highly qualified expert, concerning complex loss causation and damages issues, and advanced all fees and expenses related to his retention. Prior Lead Counsel also retained and consulted with Dr. Zachary Nye, Ph.D., a highly qualified expert with Stanford Consulting Group, at the class certification stage on issues including market efficiency and price impact.

27.     In my capacity as Lead Counsel, I coordinated these litigation efforts from February 2021. In that role, I assigned the bulk of the work on behalf of the Class to Robbins Geller, which coordinated document discovery and review, conducted all of the remaining depositions of current and former Endo employees and directors and Defendants' expert, coordinated the work of

Plaintiffs' expert on loss causation and damages, and took the lead in drafting briefs and other submissions to the Court (and to the Court of Appeals with respect to Plaintiffs' successful opposition to Defendants' petition to appeal the Court's class certification order).  I assigned Pomerantz and my own firm, Saxton & Stump, to assist with document review and to provide input on submissions to the Court, and I also assigned Pomerantz to draft the opposition to Defendants' motion for reconsideration of the Court's class certification order.  Additionally, Robbins Geller defended the depositions of a representative of Lead Plaintiff Bucks County ERS and a representative of Bucks County ERS's investment manager, and Pomerantz defended the depositions of Co-Lead Plaintiffs Pelletier and Dole.

28.     Ultimately the parties decided to ask the Court for a stay in order to focus on settlement discussions, which the Court granted.  While the stay was in place, Plaintiffs' counsel participated in numerous discussions with the mediator and with Defendants concerning a potential resolution.  These negotiations were challenging and complex, and as noted above, they included substantial discussion concerning Endo's financial condition.  Plaintiffs' counsel also engaged experienced bankruptcy counsel at Lowenstein Sandler LLP to evaluate how best to protect the interests of the Class in the context of a potential Endo bankruptcy.  The Settling Parties ultimately reached an agreement to settle the case for $63.4 million.

29.     On the other side, Defendants were represented by sophisticated lawyers from large and highly respected defense firms Latham & Watkins LLP and Morgan Lewis & Bockius LLP. This case was vigorously defended, and the result that has been obtained was earned by means of thorough preparation, long hours, and hard work.  The ability of Lead Counsel, Co-Lead Counsel, and Counsel for Co-Lead Plaintiffs to obtain a favorable settlement in the face of defense counsel's skillful opposition confirms the quality of the Class's representation in this matter.

30.     The time spent by Plaintiffs' counsel and their staffs on this case was at the expense of the time that they could have devoted to other matters.  Plaintiffs' counsel have also advanced substantial litigation costs, including expert and mediation costs.

31.     In addition, the requested fee of 25% of the Settlement Amount is consistent with the terms of the retainer agreement between Bucks County ERS and Co-Lead Counsel Robbins Geller negotiated when Bucks County ERS decided to seek a leadership role in this case.  *See* Declaration of Amy M. Fitzpatrick on behalf of Lead Plaintiff Bucks County ERS.  Bucks County ERS is an institutional investor with a substantial stake in the outcome of the Litigation.  *See id.*  Co-Lead Plaintiffs Pelletier and Dole also support the requested 25% fee.  *See* Declarations of Alexandre Pelletier and Nathan Dole.

32.     As set forth in the Final Approval Brief, the outstanding recovery obtained for the Class is the direct result of the significant efforts of attorneys who possess substantial experience in litigation and in the prosecution of complex securities class actions.  *See* ECF Nos. 396-3, 396-4, 396-5 (resume of Lawrence Stengel and firm resumes of Robbins Geller and Pomerantz); *see also* www.rgrdlaw.com; www.saxtonstump.com; www.pomlaw.com; www.bfalaw.com.

33.     In pursuing this Litigation, Plaintiffs' counsel had to persuasively weave together complex facts pertaining to a broad array of issues into a coherent narrative that explained how the conduct at issue amounted to securities fraud (and not simply bad management, for example).  Plaintiffs' counsel also had to carefully analyze each of the corrective disclosures to be prepared to rebut Defendants' attacks on loss causation.  Each firm's substantial experience and zealous advocacy was brought to bear in presenting the strengths of the Class's claims at all stages of the Litigation.

34.     To that end, Plaintiffs' counsel assembled a litigation team that included attorneys with significant trial and securities class action experience.  The undersigned, for example, is a

former federal district court judge and state court judge, and the attorneys at Co-Lead Counsel's and Counsel for Co-Lead Plaintiffs' firms who worked on this matter are also highly qualified.  Had this case not settled, this team was fully prepared to take this case to trial and continue litigating through any appeal.  Lead Counsel only recommended settlement after extensive efforts to obtain the best possible result for the Class.

35.     Lead Counsel believes that the requested fee and litigation expense awards are reasonable and appropriate in light of the result obtained, the skill and effort required, the complexity of the Litigation, the risks of undertaking this Litigation on a contingency basis, the fee negotiated by Lead Plaintiff Bucks County ERS, the endorsement by the two additional Co-Lead Plaintiffs, fee awards in comparable class actions, and the policy of incentivizing counsel to take on and diligently prosecute meritorious class actions.

36.     With respect to my own time and expenses and those of my firm, the total number of hours spent on the Litigation by Saxton & Stump is 1,815.233.  A breakdown of the lodestar is provided in the attached Exhibit A.  The lodestar amount for attorney/paraprofessional time based on Saxton & Stump's 2021 rates is $805,005.10.[2]

37.     Additionally, Saxton & Stump has incurred expenses of $1,807.68 in connection with this Litigation, including charges for filing fees, transfer of files, Federal Express, photocopies, and delivery of courtesy copies to the Court.  Those expenses, which are summarized in the attached Exhibits B-F, have been paid by Robbins Geller to Saxton & Stump.  Accordingly, Robbins Geller, not Saxton & Stump, is seeking an award of these expenses.

38.     This information regarding Saxton & Stump's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by my firm in the

---

[2]     This amount excludes work on the motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

ordinary course of business.  I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation.  As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time reflected in my firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.  In addition, I believe that these expenses are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.

39.     Expenses pertaining to this case are reflected in the books and records of Saxton & Stump.  These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.

40.     The time and expenses of Robbins Geller (Co-Lead Counsel); Pomerantz (Counsel for Co-Lead Plaintiffs); BFA (Prior Lead Counsel); Kaskela Law LLC ("Kaskela") (Co-Lead Plaintiffs' Pennsylvania counsel); and The Law Offices of Susan R. Podolsky ("Podolsky") (additional Prior Lead Plaintiff's counsel) are detailed in the declarations submitted herewith.

41.     In total, the number of hours spent on the Litigation by all Plaintiffs' counsel is 34,574.283, the total lodestar amount for attorney/paraprofessional time is $19,175,203.10, and the total amount in litigation expenses is $1,839,050.39.  Each firm's total hours, total lodestar amount, and total expenses are set forth in the chart below:

| Firm | Hours | Lodestar | Expenses |
|------|-------|----------|----------|
| Saxton & Stump | 1,815.233 | $805,005.10 | $1,807.68 |
| Robbins Geller | 9,704.40 | $5,774,860.50 | $496,462.07 |
| Pomerantz | 4,395.15 | $2,080,222.50 | $49,507.64 |
| BFA | 17,780.00 | $9,943,115.00 | $1,291,273.00 |
| Podolsky | 866.5 | $563,225.00 | 0 |
| Kaskela | 13 | $8,775.00 | 0 |
| **TOTAL** | 34,574.283 | $19,175,203.10 | $1,839,050.39 |

42.     Lead Counsel also requests that the Court award Lead Plaintiff Bucks County ERS and Co-Lead Plaintiff Pelletier $17,000 each, and award Co-Lead Plaintiff Dole $15,000, in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).  As set out in the Final Approval Brief, the declaration of a representative of Bucks County ERS filed herewith, and the declarations of Pelletier and Dole filed herewith, these awards are merited in light of the time and effort of Lead Plaintiff and Co-Lead Plaintiffs in monitoring counsel and participating in discovery, and are fully consistent with awards in similar cases.

## IV.     CONCLUSION

43.     As described above and in the Final Approval Brief, Lead Counsel respectfully submits that the Settlement and Plan of Allocation should be approved; that the Court should award attorney's fees of 25% of the Settlement Amount and $1,839,050.39 in litigation expenses, plus the interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid, all of which will be allocated among Plaintiffs' counsel in a manner that Lead Counsel believes in good faith reflects the contributions of such counsel to the prosecution and resolution of the Litigation; and that the Court should award Lead Plaintiff Bucks County ERS and

Co-Lead Plaintiff Pelletier $17,000 each, and award Co-Lead Plaintiff Dole $15,000, in connection with their representation of the Class pursuant to 15 U.S.C. § 78u-4(a)(4).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of January, 2022 at Lancaster, Pennsylvania.

*s/ Lawrence F. Stengel*

LAWRENCE F. STENGEL (PA #32809)

EXHIBIT A

**EXHIBIT A**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC
Inception through 11/30/21

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Lawrence Stengel (Ret.) | (P) | 136.7 | 850 | $116,195.00 |
| Carson Morris, Esq. | (S) | 363.433 | 450 | $163,544.85 |
| Jennifer Snyder, Esq. | (S) | 127.1 | 475 | $60,372.50 |
| Elaine Stanko, Esq. | (S) | 710.75 | 405 | $287,853.75 |
| Robert Graci (Ret.) | (S) | 21.65 | 550 | $11,907.50 |
| Kira Chhatwal, Esq. | (A) | 35.20 | 405 | $14,256.00 |
| Kiandra Steffy, Esq. | (A) | 319.2 | 405 | $129,276.00 |
| Andrea Gadd | (PL) | 78.3 | 220 | $17,226.00 |
| Deborah Tamny | (PL) | 18.9 | 195 | $3,685.50 |
| Melissa Funk | (PL) | 2.4 | 200 | $480.00 |
| Donna Stehman | (FI) | 1.6 | 130 | $208.00 |
| | | | | |
| Shareholder Relations | | | | |
| | | | | |
| | | | | |
| | | | | |
| *TOTAL* | | | | *$805,005.10* |

(P) Partner
(S) Senior Counsel
(A) Associate
(PL) Paralegal
(FI) File Specialist

# EXHIBIT B

**EXHIBIT B**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC
Inception through 12/30/21

| CATEGORY | AMOUNT |
|---|---|
| Filing, Witness, and Other Fees | $80 |
| Messenger, Overnight Delivery | $558.42 |
| Photocopies In-House | $1,067.50 |
| Miscellaneous: (extract data, encrypt file, and web transfer) | $101.76 |
| *TOTAL* | $1,807.68 |

# EXHIBIT C

**EXHIBIT C**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC

Filing, Witness and Other Fees: $80

| *DATE* | *VENDOR* | *PURPOSE* |
|---|---|---|
| 02/15/2021 | Eastern District of PA | fee to file *pro hac vice* motion |
| 06/30/2021 | Eastern District of PA | filing fee |

EXHIBIT D

**EXHIBIT D**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC

Messenger, Overnight Delivery:  $558.42

| *DATE* | *VENDOR* | *PURPOSE* |
|---|---|---|
| 3/5/2021 | FedEx | Federal Express charges |
| 3/12/2021 | FedEx | Federal Express charges |
| 4/21/2021 | FedEx | Federal Express charges |
| 4/27/2021 | FedEx | Federal Express charges |
| 5/12/2021 | FedEx | Federal Express charges |
| 7/15/2021 | FedEx | Federal Express charge to Honorable Michael Baylson (second shipment) |
| 7/15/2021 | FedEx | Federal Express charge, sent to Honorable Michael Baylson |
| 7/28/2021 | FedEx | Federal Express charge, sent to Honorable Michael Baylson |
| 7/28/2021 | FedEx | Federal Express charge |
| 7/28/2021 | Capitol Support Service | Pick up and deliver documents to US District Court, Philadelphia, Honorable Michael Baylson |
| 10/15/2021 | FedEx | Federal Express charge |

4859-0941-1846.v1

# EXHIBIT E

**EXHIBIT E**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC

In-House Photocopies: $1,067.50 (4,270 copies at $0.25 per copy)

| DATE | VENDOR | PURPOSE |
|------|--------|---------|
| 07/29/2021 | In-House | Copies of pleadings and exhibits |
| 07/29/2021 | In-House | Copies of unredacted pleadings and exhibits bound and tabbed |
| 07/29/2021 | In-House | Print 2 reports by Steven Feinstein |
| 10/29/2021 | In-House | Courtesy copies of motion, stipulation, and declaration for judge |

# EXHIBIT F

**EXHIBIT F**

*Pelletier v. Endo International PLC, et al.*, No. 2:17-cv-05114-MMB
Saxton & Stump LLC

Miscellaneous:  Extraction of Data, Encryption of Web File and Web Transfer:  $101.76

| DATE | VENDOR | PURPOSE |
|------|--------|---------|
| 2/15/2021 | Capitol Support Service | Send upload request to Evan Kubota, download files and extract, data delivered encrypted and secure web transfer |
| 2/23/2021 | Capitol Support Service | Data delivered encrypted and secure web transfer |