IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALEXANDRE PELLETIER**, Individually and On Behalf of All Others Similarly Situated**,**<br><br>v.<br><br>**ENDO INTERNATIONAL PLC et al** | **CIVIL ACTION**<br><br>**NO. 17-cv-5114** |

## MEMORANDUM RE: ATTORNEYS' FEES AND COSTS

Baylson, J.                                                                                          March 25, 2022

**I.        Introduction**

In a prior Order filed on February 23, 2022, this Court approved all aspects of the Class Settlement except Attorneys' Fees. During a recorded telephone hearing on February 23, 2022, concerning the Motion for Approval of a Settlement, the Court indicated that it intended to award a percentage of the settlement funds for lead and co-lead counsel and other counsel that assisted them. These counsel have agreed that lead counsel, Lawrence Stengel, will have the principal role in allocating this amount.

The Court will separate the request for Attorneys' Fees by prior lead counsel, the firm Bleichmar Fonti & Auld LLP ("BFA"), and for reasons stated below, will award that firm attorneys' fees without specifying hours or a specific rate. BFA will not share in the fee calculated as a percentage of the settlement to be awarded to the other counsel.

Supplemental Memoranda have been filed separately by BFA, and the new lead counsel. See ECF No. 413 & 414.

**II.       BFA's Conduct Requires a Reduction in the Fees Requested**

In its Request for Attorney's Fees, BFA seeks compensation for most but not all of the hours it worked on this case, up until the time it was removed as lead counsel.

In its Opinion, dated February 4, 2021, 2025 WL 398495 (ECF 272) the Court gave several reasons for removal of BFA as lead counsel, which will be summarized below.

A. **BFA as lead counsel prior to December 20, 2022**

A prior judge had approved BFA as lead counsel. After this case was reassigned to me, I learned that BFA had done substantial work in the case as lead counsel, including the important topics of drafting of the complaint, serving document requests, review of documents and similar discovery matters. BFA also took the deposition of five Endo personnel, prepared and filed a Motion for Class Certification under Rule 23, retained an expert, submitted an expert report and deposed an Endo expert. BFA's work, aside from the matters mentioned in the February 4th Opinion, was performed competently. BFA has summarized its work in its Supplemental Memorandum (ECF 414).

B. **Summary of the February 4, 2022 Opinion**

The Court concluded BFA had seriously impacted the chances of success for the alleged class as follows:

1. Endorsement of Park as Lead Plaintiff, knowing there were serious problems concerning the facts relating to its ownership of Endo's shares that would, upon discovery, show Park had serious deficiencies as an adequate class representative.

2. Concealment of facts concerning non-party Lombardia, which had a significant role in the purchase of Endo's shares.

3. Commencing an irrelevant, time consuming, and meritless intervention in Pennsylvania state court proceedings, in a separate litigation against Endo, which seriously delayed the resolution of this case for a significant period of time.

4. Filing numerous motions to quash third party subpoenas issued by Endo in various other federal district courts, in an effort to prevent Endo from discovering facts that were relevant to its defense, and not disclosing these motions to this Court.

BFA's conduct was a serious series of misrepresentations and omissions, and meritless litigation activity, which had the effect of delaying resolution, exposing the inadequacy of its proposed class representative, and preventing the defendant from finding relevant information. Given these circumstances, a district judge has the duty, acting as fiduciary of the punitive class, to take action. Thus, BFA was removed as lead counsel and Park was removed as lead plaintiff.

### III.  Discussion

Removal of lead counsel alone, in some cases, without reducing compensation, may be sufficient.  However, when the facts demonstrate that counsel is claiming huge compensation for many hours of work that were contrary to the interests of a class, the result should be quite the opposite – merely removing lead counsel is insufficient.

Reducing the compensation to which former lead counsel is entitled, has a salutary effect of not penalizing the class because of the misdeeds of prior lead counsel, but also, "financial deprivation" for former lead counsel for its conduct is also a deterrent to other attorneys appointed as lead counsel.

Class proceedings have resulted in billions of dollars awarded to entities and individuals who have suffered damages and received recoveries through class settlements (or verdicts) in federal and state courts.  These damages are due to the skill and diligence of class representatives, and competent counsel – in pursuing litigation, whether under the PLRSA, the antitrust laws, mass torts, or in employment discrimination cases, etc.  Nonetheless, the dereliction of lead counsel, misrepresentations to the Court, and claiming compensation for thousands of hours of legal time that were not necessary, is improper.  When it has occurred, as in this case, a corrective measure, principally in the diminution of award of fees, is appropriate, and necessary.

Nothing in this Opinion is intended to deter the vigorous prosecution of cases where the facts warrant that complaints be filed, evidence secured, and discovery and trial vigorously prosecuted.

Judges should not micromanage class pretrial proceedings, or serve as any kind of "watch dog" over lead counsel in federal securities cases. However, this "outlier" case represents not merely an absence of professional responsibility, but also a dereliction of duty to the class and the court. Misrepresentations, to the Court and also to the Class, and recording thousands of hours that were of no benefit whatsoever to the Class, were documented in the February 4, 2021 Opinion. Now that the time has come to award counsel fees, financial deprivation of BFA as prior lead counsel is necessary.

BFA has stated in its Petition (ECF 402), it spend a total of 23,805 hours in this case, for which, at its "regular rates", results in a lodestar of over $14 million. BFA states that the Court can and should deduct 5,158 hours for some of its work, including work it did for Park, and all of the hours it spent contesting the Pennsylvania state court proceedings. *[1] BFA has not submitted any records or summaries of records from which the Court can evaluate the accuracy of this contention. The Court agrees that this reduction is necessary but additional reductions are also necessary.

BFA's Fee Petition shows no breakdown of attorney time by date, or summary of work. Thus, the Court cannot ascertain or itemize specific reductions of specific hours on specific dates. The Court believes it is important as a result of all circumstances here, to deprive BFA of

---

[1] Recognizing that over 5,000 hours reflects over 2 years of work by a single attorney who is diligently working more than "9 to 5", this is an astounding amount of time for finding facts relevant to an attorney's own client, which the Court assumes is a very low percentage of this number. The huge hours spent in the Pennsylvania State Court litigation were not only meritless, but reflect unbounded attorney hours. There is no evidence in the record that any client of BFA ever paid this "regular" rate.

compensation not only for the time it spent on specific activities that this Court criticized in the February 4, 2021, Opinion, but in addition, for its disregard for professional conduct and its misrepresentations to the Class and the Court. Otherwise, the Court would basically be ignoring the severity of BFA's conduct.

A judge must recognize that "time is money" and that lawyers representing Plaintiffs frequently spend many hours building cases, but recovery is contingent on a successful result. In private actions between private plaintiffs and their own attorney, a Court has no duty or even ability to inquire into fees, with few exceptions, such as a settlement for the benefit of a minor child.  However, in class actions, and in "mass tort" cases, courts have been concerned with huge fee requests.  *²

Surely, not every hour spent will be productive and many hours may be spent without any gain for the client.  However, the misrepresentations and other bad conduct, as cited above, are entirely different than just activity that ends up as not beneficial to a client.

In considering all of these considerations, the Court has decided, to award a flat attorneys' fee of $1,500,000 as compensation to BFA for its work, as appropriate under all the circumstances.

In addition, the Court will award all of BFA's requested out of pocket expenses in the amount of $1,291,273 as these are documented and appear to be valid and include the amount of $68,000 to a Philadelphia firm which acted as local counsel for a period of time.   *³

---

² See In Re: National Prescription Opiate Litigation, No. 17-2804, slip op. at 7 (N.D. Ohio Aug. 6, 2021) (MDL 2804) (Polster, J.), and the decision of Judge Chabria in In Re: Roundup Products Liability Litigation, 544 F.Supp.3d 950, 952 (N.D. Ca. 2021) (MDL 2741).  Both of these judges express concerns about fee generation in class actions and mass tort actions.

³ The proposed form of order submitted with the Class Settlement Motion, contained in paragraph 13, a proposed finding, by this Court, that no attorney had violated Rule 11, F.R.C.P. There was no reason for the inclusion of this paragraph because no mention had been made in the case about any Rule 11 transgressions.  During this conference call, the Court ordered that paragraph 13 be removed and the reference to Rule 11 must be struck. This Court does

## IV. Award to Lead Counsel and Co-counsel

The award of fees to the new lead and co-lead counsel in this case will demonstrate that quality and performance of results will be handsomely rewarded.

The new lead counsel and co-counsel, as detailed in their Fee Petition and Supplemental Memorandum, worked vigorously and successfully in bringing this case to a close for the benefit of the class, in a very short period of time.

The Court will approve the request of lead counsel that there be an award of 25% of the settlement, or $15,850,000, as the total fees for all counsel, including BFA, in this case.  A reasonable relationship exists between the amount of awarded and the reasonable hours recorded, at a reasonable rate. Thus, deducting the amount of fees and costs awarded to BFA, leaves a total amount of $16,058,727 for fees and costs to the new lead counsel and co-counsel.  These firms are also entitled to reimbursement for their costs, and then the remaining amount is for their fee, to be allocated by Mr. Stengel.

O:\CIVIL 17\17-5114 Pelletier v Endo Intl\17cv5114  Memorandum re attorneys' fees.docx

---

not see any need to cite or rely on Rule 11 because it has adequate authority under Rule 23, to reduce the fees requested by BFA for its inappropriate conduct.  However, if the occasion arises for any questioning of the Court's authority, the Court reserves its right to issue notice and an opportunity for a hearing as required by Rule 11.